UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUDSON YARDS CONSTRUCTION LLC, | Case No.: 18 CIV 02376 GHW)(DCF) ECF Case |
| Plaintiff, | |
| -against- | |
| BUILDING AND CONSTRUCTION TRADES COUNCIL OF GREATER NEW YORK AND VICINITY and GARY LaBARBERA, | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

---

Respectfully submitted,

**WACHTEL MISSRY LLP**
1 Dag Hammarskjold Plaza
885 Second Avenue, 47th Fl.
New York, New York  10017
(212) 909-9500

**COVINGTON & BURLING LLP**
620 8th Avenue
New York, New York  10018
(212) 841-1000

*Attorneys for Plaintiff*

020019-494/00127144-1

## Table of Contents

Table of Authorities ...................................................................................................(ii)

PRELIMNARY STATEMENT.........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

    A. Hudson Yards Construction, LLC ....................................................................3

    B. Building and Construction Trades Council of Greater New York and
       Vicinity and its President, Gary LaBarbera ......................................................4

    C. Defendants' Tortious and Defamatory Conduct ...............................................5

ARGUMENT .....................................................................................................................6

I.     DEFENDANTS MUST PROVE REMOVAL IS APPROPRIATE....................................6

II.    THE COURT LACKS DIVERSITY JURISDICTION .....................................................7

III.   THE COURT LACKS FEDERAL QUESTION JURISDICTION
       UNDER THE LRMA .........................................................................................9

    A. There Is No Preemption Under Sections 301 and 303 of the LMRA Because
       BCTC Is Not A "Labor Organization." ...........................................................9

    B. The Court Has No Federal Question Jurisdiction Over Claims Against
       Tortfeasor LaBarbera ......................................................................................14

    C. Plaintiff's Claims Are Not Preempted Under LMRA Section 301 Because
       They Are Not Substantially Dependent on the Terms of a Collective
       Bargaining Agreement .....................................................................................15

    D. Plaintiff's Causes of Action Are Not Preempted Under LMRA Section 303
       Because They Do Not Relate To Secondary Activity .......................................17

    E. There Is No Federal Question Jurisdiction Over Plaintiff's Defamation
       Cause of Action................................................................................................19

CONCLUSION................................................................................................................20

## Table of Authorities

**Cases**                                                                      **Page No.**

*Allis-Chalmers Corp. v. Lueck,*
   471 U.S. 202 [1985] ................................................................................. 15, 16

*Anwar v. Fairfield Greenwich Ltd.,*
   676 F. Supp. 285 [S.D.N.Y. 2009]............................................................. 6, 7, 11, 18

*Avant Capital Partners, LLC v. W108 Dev. LLC,*
   2016 WL 3660756 [S.D.N.Y. June 30, 2016].................................................... 7

*Beacon Moving and Storage, Inc. v. Local 814, Int'l Brhd of Teamsters, etc.,*
   362 F. Supp. 442 [S.D.N.Y. 1972] .................................................................. 7

*Blockbuster, Inc. v. Galeno,*
   472 F.3d 53 [2d Cir. 2006]............................................................................. 6

*Bus. Asset Relocation, Inc. v. Teamsters Local 814,*
   2015 WL 1443267 [E.D.N.Y. March 27, 2015] ............................. 10, 11, 13, 14, 15

*Carter v. HealthPort Techs., LLC,*
   822 F.3d 47 [2d Cir. 2016]............................................................................. 7

*Electric Workers, IBEW (AFL-CIO) Local 3 (Di Gangi Electrical Services),*
   130 NLRB 1458 (1961); ............................................................................... 12

*FDIC v. Tyco Int'l Ltd.,*
   422 F. Supp. 2d 357 [S.D.N.Y. 2006]............................................................. 6

*Foy v. Pratt & Whitney Group,*
   127 F. Supp. 357 [2d Cir. 1997]..................................................................... 17

*Gay v. Carlson,*
   60 F.3d 83 [2d Cir. 1995]............................................................................... 17

*In the Matter of Stiefel Construction Corp. and United Steelworkers of America, CIO,*
   64 NLRB 565 (1945)...................................................................................... 12

*Iodice v. Calabrese,*
   345 F. Supp. 248 [S.D.N.Y. 1972] ................................................................. 14

*Jody Fair, Inc. v. Dubinsky,*
   225 F. Supp. 695 [S.D.N.Y. 1964].................................................................. 7

## Table of Authorities

**Cases**                                                                                        **Page No.**

*Lingle v. Norge Div. of Magic Chef, Inc,*
   486 U.S. 399 [1988] ............................................................................................... 15

*Linn v. United Plant Guard Workers,*
   383 U.S. 53 [1966] ................................................................................................. 19

*Livadas v. Bradshaw,*
   512 U.S. 107, 114 S. Ct. 2068, 129 L. Ed. 2d 93 [1994] ........................................ 15

*Lupo v. Human Affairs Int'l, Inc,*
   28 F. 3d 269 [2d Cir. 1994] ..................................................................................... 7

*Martin v. Snyder,*
   148 U.S. 663 [1893] ................................................................................................. 9

*Montana v. Smith,*
   92 A.D.2d 732 [1983] ............................................................................................. 19

*National Bank of North America v. Local 553 Pension Fund, etc.,*
   463 F. Supp. 636 [E.D.N.Y. 1978] .......................................................................... 7

*National Gypsum Co.,*
   32 NLRB 976 (1941) ............................................................................................... 12

*NLRB v. Local 3 Int'l Brotherhood of Elec. Workers,*
   471 F.3d 399 [2d Cir. 2006] .................................................................................... 18

*NLRB v. Local 3 Int'l Brotherhood of Elec. Workers,*
   730 F.2d 870 [2d Cir. 1984] .................................................................................... 18

*Prater v. United Mine Workers of Am. Districts 20 & 23,*
   793 F. 2d 1201 [11th Cir. 1986] .............................................................................. 14

*R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local
89-22-1, I.L. G.W.U.,*
   789 F. Supp. 127 [S.D.N.Y. 1992] .......................................................................... 14

*Rivas v. Bowling Green Assocs., L.P.,*
   2014 WL 3694983 [S.D.N.Y. July 24, 2014] ......................................................... 8

*Smith-Emery Co. v. Int'l Union of Operating Eng'rs Local Union No. 12,*
   2017 WL 3634590 [C.D. Cal. August 21, 2017] ..................................................... 17

## Table of Authorities

**Cases**                                 **Page No.**

*Snyder Corp. v. Fitness Ridge Worldwide, LLC,*
2018 WL 1428254 [W.D.N.Y. March 22, 2018] ...... 8

*Wilds v. UPS, Inc.,*
262 F. Supp. 2d 163 [S.D.N.Y. 2003] ...... 6

*Wilmington Tr. Co. v. Hellas Telecommunications, S.à.r.l.,*
2016 WL 7339112 [S.D.N.Y. August 4, 2016] ...... 8

*Wolf St. Supermarkets, Inc. v. McPartland,*
108 A.D.2d 25 [1985] ...... 20

**Statutes**                              **Page No.**

28 U.S.C. § 1332 ...... 7

28 U.S.C. § 1441(b)(2); ...... 8

28 U.S.C. § 1447(c). ...... 1

29 U.S.C. § 152 ...... 9, 14

29 U.S.C. §§ 158(b)(4) ...... 3, 9

29 U.S.C. §§ 185, ...... 9, 14

29 U.S.C. § 185(a) ...... 15

29 U.S.C. § 187 ...... 3, 9, 14, 18

## PRELIMINARY STATEMENT

Plaintiff Hudson Yards Construction, LLC brought an action in New York State Supreme Court to redress the tortious and illegal conduct of the Building and Construction Trades Council of Greater New York & Vicinity ("BCTC") and its President, Gary LaBarbera ("Mr. LaBarbera" and collectively, "Defendants") which caused extraordinary damage to Plaintiff's management of the largest commercial real estate project in New York City. Rather than litigate the dispute in state court, where it belongs, Defendants removed the case in hopes of obtaining a dismissal on grounds of preemption. In so doing, Defendants directly contradict the arguments that they made a mere three years ago in the Eastern District of New York, and misconstrue black letter law on diversity jurisdiction. Because this Court lacks subject-matter jurisdiction over the state-law torts committed by Defendants, the Court should grant Plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c).

Plaintiff is the construction manager of the Hudson Yards Development Project ("HYD"). In January 2013, Plaintiff entered into a site-wide project labor agreement ("PLA") with the BCTC and its member labor unions, permitting those unions to be hired for HYD's Eastern Railyards construction ("ERY"). However, during construction, Defendants failed to honor the PLA's terms.

As a consequence, Plaintiff declined to enter into a new PLA for the remaining portions of the HYD, including the Western Railyards and 50 Hudson Yards construction. Instead, Plaintiff decided to solicit both union and non-union bids for the substantive non-PLA-covered work to be done at HYD and/or directly enter into contracts with BCTC's affiliated trade union members. In response, Defendants engaged in repeated tortious and illegal efforts to interfere

with such prospective contracts and commenced a defamatory campaign against Plaintiff, maliciously designed to inflict reputational harm.

On March 5, 2018, Plaintiff commenced an action in New York State Supreme Court to remedy the extraordinary damage Defendants caused, alleging two state-law causes of action: (i) tortious interference with prospective economic advantage; and (ii) defamation. Defendants subsequently removed the case to this Court, alleging federal jurisdiction based on (a) diversity; and (b) federal-question jurisdiction because Plaintiff's claims are purportedly preempted under both Sections 301 and 303 of the Labor Management Relations Act ("LMRA"). But Defendants have not—and cannot—carry *their* burden as to each alleged grounds for removal. Their arguments are at odds with well-established labor law, principles of subject matter jurisdiction, and factual assertions that these very defendants made just three years ago in federal court. Accordingly, the Court should remand the case to New York State Supreme Court for the reasons set forth below:

*First,* Defendants' invocation of diversity jurisdiction fails. There is no complete diversity of citizenship because Plaintiff, a limited liability corporation, is comprised of a New York-based member and both Defendants are New York citizens. In addition, a New York defendant cannot remove based on diversity jurisdiction.

*Second,* the state-law claims are not preempted under either LMRA Section 301 or 303 because the BCTC is—by its own recent admission in federal court—*not* a "labor organization." Further, there is no federal jurisdiction over either claim against individual defendant Gary LaBarbera.

*Third*, the Court does not have jurisdiction under LMRA Section 301 because the Complaint does not assert a cause of action that requires interpretation of any collective bargaining agreement.

*Fourth*, the Court does not have jurisdiction under LMRA Section 303 because Plaintiff's state-law tort causes of action are premised on Defendants' "primary"—not "secondary"—activity and therefore fail to implicate 29 U.S.C. §§ 158(b)(4), 187 in any respect.

*Finally*, it is well-settled that defamation causes of action derived from the labor relations context may proceed in state court where—as here—Plaintiff has sufficiently pled actual malice and damages suffered as a result of Defendants' defamatory conduct.

Accordingly, the Court should remand Plaintiff's Complaint to the proper jurisdiction of New York State Supreme Court.

## STATEMENT OF FACTS

### A.  Hudson Yards Construction, LLC

Plaintiff is the construction manager for HYD and is charged with overseeing the entire Hudson Yards development project, including entering into contracts with trade unions and labor councils in connection with the project. (*See* Summons and Complaint, ECF No. 3-2 ("Compl.") at ¶ 1, 18.) Plaintiff, a Delaware limited liability company, is registered to do business in the State of New York and has a principal place of business at 60 Columbus Circle, New York, New York. (*Id.* at ¶ 12.) The sole member of Plaintiff is Hudson Yards Holdings, LLC. (*See* Declaration of Michael J. Brenner at ¶ 3.) The sole member of Hudson Yards Holdings, LLC is

3

The Related Companies, L.P., a New York limited partnership, which also has a principal place of business at 60 Columbus Circle, New York, New York. (*Id.* at ¶ 4.) At least one of the individual limited partners of The Related Companies, L.P. is a New York citizen. (*Id.* at ¶¶ 6-7.)

B. **Building and Construction Trades Council of Greater New York and Vicinity and its President, Gary LaBarbera**

Defendant BCTC is a New York-based[1] umbrella organization comprised of representatives of approximately 15 labor unions, and is a political entity advocating for its affiliate unions and providing coordination and support to them. (Compl. at ¶ 24; *see also* Verified Petition for Removal ("Removal Petition"), ECF No. 3-1, at ¶ 3.) As the BCTC admitted to this Court, "[e]mployees do not participate directly in the business of the BCTC." (Hearing Tr.[2], 3/30/18 at p. 8:3-4.) The BCTC cannot negotiate wages or work conditions, or otherwise bind any union without a separate and specific authorization and assent and agreement by such union. (Compl. at ¶ 24.) Gary LaBarbera, a New York State resident, is the President of the BCTC.[3] (*Id.* at ¶ 14-15.)

---

[1]   The BCTC's principal place of business is at 71 West 23rd Street, New York, New York. (Compl. at ¶ 13.)

[2]   A copy of the transcript from the March 30, 2018 hearing is annexed to the Declaration of Evan Weintraub, Esq. as Exhibit A.

[3]   Mr. LaBarbera previously held office as the President of Teamsters Local 282 and was subject to a federal investigation for his egregious and illegal conduct in that capacity. A Federal Court-appointed investigator concluded that Mr. LaBarbera violated his oath of office as President of Local 282 and violated his fiduciary duties as trustee of the union funds. The investigator referred charges to the Local 282 President that, among other things, Mr. LaBarbera knowingly violated a consent judgement and obstructed the work of the investigation. The investigator also referred the matter to the United States Attorney. Mr. LaBarbera entered into a settlement agreement with the Teamsters, which provided that he would be banned from seeking or holding office at Teamster Local 282. (*Id.* at ¶ 15, *see also* Ex. A to Compl.)

C. **Defendants' Tortious and Defamatory Conduct**

Plaintiff agreed to use union labor exclusively for the ERY portion of the HYD and, on January 16, 2013, memorialized its agreement to do so with the BCTC and 35 individual local unions in the PLA. (Compl. at ¶ 25.) However, based on its subsequent experience under the PLA, Plaintiff concluded that it would not negotiate a new PLA with the BCTC and the local unions for the remaining portions of Hudson Yards, including the Western Rail Yards (the "WRY") and 50 Hudson Yards. (*Id.* at ¶ 5.) Instead, Plaintiff designated 50 Hudson Yards a "merit shop," meaning both union and non-union contractors could bid on the project, and sought to enter into separate Trade Labor Agreements (each, a "TLA") with individual unions. (*Id.* at ¶¶ 6, 72.)

In response, Defendants—BCTC and its president, Mr. LaBarbera—embarked on a transparent campaign of bullying and defamation. (*Id.* at ¶ 9.) Defendants tortiously pressured their affiliated unions not to enter into any agreements to work at 50 Hudson Yards unless Plaintiff agreed that the entire building would be constructed by union laborers. (*Id.* at ¶¶ 79, 89.) Additionally, the BCTC threatened affiliated unions with sanctions if they signed a TLA, including but not limited to barring them from participating in at least some, if not all, of the future large public works projects that the BCTC spearheads. (*Id.* at ¶ 90.) Defendants acted with the purpose of harming Plaintiff in its business relations, and they have in fact damaged Plaintiff's prospective economic advantage in an amount of not less than $50,000,000. (*Id.* at ¶¶ 92-93.)

In addition, Mr. LaBarbera made false and derogatory statements about Plaintiff and its executives. (Compl. at ¶¶ 78, 95.) For instance, at a public rally on November 14, 2017, Mr.

LaBarbera called Plaintiff "greedy" "union busters" who "don't want to pay benefits" and are "using you [union workers] up and throw[ing] you to the side." (*Id.*) Mr. LaBarbera also made public statements describing the HYD work site as a "prison." (*Id.*) As Defendants are well-aware, these comments are false. (*Id.* at ¶¶ 96, 98.) Defendants plainly defamed Plaintiff by publishing these statements with actual malice and intent to harm HYC. (*Id.* at ¶ 99.) Defendants' tortious conduct has been highly detrimental to Plaintiff and caused significant actual damage to Plaintiff's reputation and standing in the community; naturally, the exact amount of damage Defendants wreaked will be determined according to proof at trial. (*Id.* at ¶¶ 99-104.)

## ARGUMENT

### I.  DEFENDANTS MUST PROVE REMOVAL IS APPROPRIATE.

As the Court articulated at the March 30 pre-motion conference, *Defendants* bear the burden of proof on this motion. *See* Hearing Tr., 3/30/18 at 8:21-24, 10:5-7. Defendants must "establish[] to a 'reasonable probability' that removal is proper" and that the action arises under federal law. *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (*citing Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006)). Indeed, "the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise." *Wilds v. UPS, Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (internal citations omitted). These principles preserve the limited jurisdiction of federal courts and maintain "the independence of state courts." *FDIC v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2006). "[A]ny doubts regarding the propriety of removal are resolved in favor of remand, and

'federal courts construe the removal statute narrowly.'" *Anwar*, 676 F. Supp. 2d at 292 (*quoting Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

To this end, the factual allegations of the complaint are deemed controlling and must be read as drawn by Plaintiff. *See National Bank of North America v. Local 553 Pension Fund, etc.*, 463 F. Supp. 636, 639 (E.D.N.Y. 1978); *Beacon Moving and Storage, Inc. v. Local 814, Int'l Brhd of Teamsters, etc.*, 362 F. Supp. 442, 444 (S.D.N.Y. 1972); *Jody Fair, Inc. v. Dubinsky*, 225 F. Supp. 695, 696 (S.D.N.Y. 1964).   Indeed, at the pre-motion conference, Defendants committed that they would rely solely on the facts pleaded in the Complaint (and the attachments thereto) and would not "go[] outside of the pleadings."  Hearing Tr. 3/30/18 at 8:21 – 10:1.

As explained below, Defendants' removal petition does not satisfy their burden under these exacting standards.

## II.   THE COURT LACKS DIVERSITY JURISDICTION.

Defendants have asserted that the Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a Delaware limited liability company, Defendants are New York residents and the amount in controversy exceeds $75,000.  (*See* Removal Petition at ¶ 11.)  In fact, the diversity necessary to support jurisdiction does not exist, and the New York Defendants cannot remove based on diversity in any event.

For purposes of evaluating diversity, the citizenship of a limited liability corporation is determined by the citizenship of each of its members, not its state of incorporation. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016).  Where, as here, the Plaintiff LLC has members which are one or more LLCs, "the citizenship of the members of those LLCs must also be given, and must be diverse." *Avant Capital Partners, LLC v. W108 Dev. LLC*, 2016 WL

3660756 at *2 (S.D.N.Y. June 30, 2016). "The citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Snyder Corp. v. Fitness Ridge Worldwide, LLC,* 2018 WL 1428254 at *2 (W.D.N.Y. Mar. 22, 2018) (citations omitted).

Here, Plaintiff is a New York citizen for diversity purposes. Plaintiff is a limited liability company, whose sole member is Hudson Yards Holdings LLC. Hudson Yards Holdings LLC is also a Delaware limited liability company. (Decl. of Michael J. Brenner at ¶ 3.)[4] The sole member of Hudson Yards Holdings LLC is The Related Companies, L.P. ("Related"), a New York limited partnership. (*Id.* at ¶ 4.) A limited partnership has "the citizenship of each of its general and limited partners." *Wilmington Tr. Co. v. Hellas Telecommunications, S.à.r.l.,* No. 12-CV-8686 (JPO), 2016 WL 7339112, at *2 (S.D.N.Y. Aug. 4, 2016). At least one of the individual partners of Related is a New York citizen. (Decl. of Michael J. Brenner at ¶¶ 6-7.) Thus, Related is a New York citizen, which means Hudson Yards Holdings is a New York citizen, which means Plaintiff is also a New York citizen. Moreover, as the Removal Petition admits, Defendants are citizens of New York. (*See* Removal Petition at ¶ 11.) Thus, complete diversity is lacking as between Plaintiff and Defendants.

Even were the Court to find that sufficient diversity exists to establish jurisdiction, it is well-established that the New York-based Defendants may not remove based on diversity jurisdiction. *See* 28 U.S.C. § 1441(b)(2); *see also Rivas v. Bowling Green Assocs., L.P.,* 13-cv-7812 (PKC), 2014 WL 3694983 at *1 (S.D.N.Y. July 24, 2014) ("It has long been a feature of

---

[4]     Citizenship of Plaintiff was not pleaded in the Complaint. Although Defendants bear the burden of proving diversity of citizenship, the Removal Petition does not do so, and Defendants' pre-motion letter simply notes that the Complaint is silent as to Plaintiff's citizenship. Plaintiff has therefore provided the Court with the necessary information through the accompanying Declaration.

federal removal practice that the removing party may not be a citizen of the state where the district court sits.") (citing *Martin v. Snyder*, 148 U.S. 663, 663-64 (1893)).

For these reasons, the court lacks diversity jurisdiction as a basis for removal.

III.    **THE COURT LACKS FEDERAL QUESTION JURISDICTION UNDER THE LMRA.**

A.    **There Is No Preemption Under Sections 301 and 303 of the LMRA Because BCTC Is Not A "Labor Organization."**

Defendants contend that the Court has subject-matter jurisdiction under LMRA Section 301 and/or Section 303 over Plaintiff's state-law causes of action. (*See* Removal Petition at ¶¶ 6-10.)  That is wrong because Defendants concededly are not a "labor organization." *See* 29 U.S.C. §§ 185, 187.

Section 301 of the LMRA confers jurisdiction for "[s]uits for violations of contracts between an employer and a *labor organization* representing employees in an industry affecting commerce."  29 U.S.C. § 185 (emphasis added).  Section 303 of the LMRA confers federal jurisdiction for claims that a "labor organization" has engaged in activity or conduct defined as an unfair labor practice in 29 U.S.C. § 158(b)(4)).  29 U.S.C. § 187.  No federal subject-matter jurisdiction exists if BCTC is not a "labor organization" within the meaning of these statutes.

The statutory definition of a "labor organization" includes two distinct requirements:  the entity must be an organization "in which employees participate" and "which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."  *See* 29 U.S.C. § 152.  The BCTC cannot satisfy either requirement.

As to the first factor, it is undisputed that no employees participate in the business of the BCTC. Indeed, the BCTC admitted as much during the pre-motion conference in this case. (Hearing Tr., 3/30/18 at 8:3-4.) Also, just three years ago, in support of its motion to dismiss a complaint alleging violations under LMRA Section 303 commenced in the Eastern District of New York, the BCTC argued that it was not a "labor organization" because, *inter alia,* "[e]mployees do not actively participate in the BCTC" and the "BCTC does not represent employees of any employer." *See Bus. Asset Relocation, Inc. v. Teamsters Local 814*, No. 14-CV-0098 (RRM) (VMS), 2015 WL 1443267, at *5 n. 6 (E.D.N.Y. Mar. 27, 2015) (ECF No. 32 at 15-17; ECF No. 36 at 3-4). The inquiry should end here.

But even as to the second factor, the Complaint contains the following specific factual allegations demonstrating that the BCTC does not meet the statutory definition of a "labor organization":

- The BCTC "is not itself a labor union" (Compl. at ¶ 13);

- The "BCTC is an umbrella organization comprising representatives of approximately 15 unions, which advocates for the use of PLAs as a way of encouraging the exclusive use of union labor which would otherwise not be cost-competitive with Merit Shop labor." (*Id.* at ¶ 24);

- "The BCTC is for all intents and purposes a political organization advocating for its affiliate unions." (*Id.*);

- "The BCTC is not a signatory to any collective bargaining agreement because it is not a labor union, in that it does not represent or organize any group of trade employees/workers/craftsmen." (*Id.*); and

- "As a result, the BCTC cannot negotiate wages or work conditions, or otherwise bind any union without a separate and specific authorization and assent and agreement by said union." (*Id.*)

Plaintiff's numerous specific factual allegations, which must be construed in a light most favorable to Plaintiff, *see, Anwar, supra,* 676 F. Supp.2d at 292, easily clear the low bar at the pleading stage for the Court to reach the conclusion that the BCTC is not a "labor organization." Moreover, Defendants cannot contest these allegations because they represented to the Court they would rely solely on the pleadings to argue whether BCTC is a "labor organization."

Plaintiff's factual allegations are confirmed by the fact that the BCTC has made Plaintiff's *very same arguments,* relying on these *very same facts. See Bus. Asset Relocation, Inc.,* 2015 WL 1443267 at *5. In that case, plaintiff, a moving company, alleged that the BCTC, among other entities, engaged in unfair labor practices under Section 303 of the LMRA, specifically under sections 8(b)(4)(A), 8(b)(4)(B) and 8(b)(4)(D). *Id.* The BCTC filed a motion to dismiss the federal court complaint for want of jurisdiction because, *inter alia,* the BCTC is not a "labor organization." *Id.* The factual assertions in support of the BCTC's motion in that case mirror Plaintiff's allegations here: the BCTC asserted that it is "an umbrella organization comprised of local building and construction trade unions, engaged in primarily in legislative, political and community activity in advocacy for its affiliate organizations. Employees do not actively participate in the BCTC. The BCTC does not represent employees of any employer." *Id.,* ECF No. 32 at 14.

Although the BCTC was unsuccessful in persuading the district court to dismiss the pleading on this basis, the court's conclusion was based in large measure on the procedural posture there. On a motion to dismiss, the court was required to accept the plaintiff's plausible allegation "that BCTC is a labor organization." The court deferred deciding the issue: "any dispute with this allegation is more appropriately dealt with after discovery." *See Bus. Asset.*

*Relocation, Inc.*, 2015 WL 1443267, at *5 n. 6.  The district court recognized that at the motion to dismiss stage, it was required only to determine whether the complaint included "enough facts to state a claim to relief that is plausible on its face." *Id.* at *7 (internal citations omitted).[5]  Here, it is *Plaintiff's* specific factual allegations that warrant the Court's deference, and when viewed through that lens, those unrebutted facts unequivocally lead to the legal conclusion that the BCTC is *not* a "labor organization."

Even in their Verified Petition for Removal (ECF No. 3-1), defendants describe the BCTC as "an umbrella organization comprised of local labor unions and district councils affiliated with 15 National Trades Unions affiliated with North America's Building Trades Unions, representing 100,000 New York City construction workers.  The BCTC provides coordination and support to its affiliated local unions in order to achieve a unified effort on behalf of organized construction workers with respect to governmental affairs, the improvement of working conditions, and community and economic development that provide work opportunities for our affiliates' members.  The BCTC is also apparently being sued in its capacity as an entity that negotiated and executed the Project Labor Agreement ("PLA") covering specified work at the Eastern Railyards portion of the Hudson Yards development as well as an advocate for PLAs generally." *Id.* at ¶ 3.  Notably the Verified Petition for Removal is wholly consistent with the allegations in the Complaint, consistent with defendants' prior position in *Bus. Asset. Relation, Inc.*, and inconsistent with their current self-serving position.

---

[5]  The district court also noted that the National Labor Relations Board ("NLRB") has, on a few occasions, indicated that the BCTC falls under the National Labor Relations Act ("NLRA") as a "labor organization"; however, it does not appear that the BCTC's status as a "labor organization" was challenged in those cases. *See, e.g., Electric Workers, IBEW (AFL-CIO) Local 3 (Di Gangi Electrical Services)*, 130 NLRB1458, 1459 (1961); *In the Matter of Stiefel Construction Corp. and United Steelworkers of America, CIO*, 64 NLRB 565, 566 (1945); *National Gypsum Co.*, 32 NLRB 976, 977 (1941).  Moreover, the fact that the NLRB found that the BCTC was a "labor organization" more than 60 years ago does not alter the fact that employees do not now participate in the organization and the BCTC does not now deal with employers on behalf of any employees.

The Court should reject the BCTC's recent abrupt about-face from the position it took in *Bus. Asset Relocation, Inc.* merely three years ago. When questioned by the Court during the pre-motion conference, the BCTC asserted that "there have been developments over the last several years which lead us to rethink th[e] position" it took previously that it was not a "labor organization." (Hearing Tr., 3/30/18 at 5:12-25.) Although the BCTC did not say what, if any, recent developments warrant this stark departure, the BCTC asserts as a partial basis for its position that it submits LM-2 reports with the United States Department of Labor and processes grievances. (*Id.* at 6:8-15, 7:2-5.) But neither fact is a recent development sufficient to justify its changed stance,[6] and, more importantly, neither indicia resolves the legal issue as to its status as a "labor organization."

The BCTC further asserts as a basis for its legal status that it "negotiates contracts regularly, including Project Labor Agreements." (*Id.* at 7:5-6.) But this is also not a recent development. The PLA referenced in the Complaint was negotiated in 2012 and executed in January 2013 (*see* Compl. at ¶ 3) and, therefore, was in existence well-in advance of Defendants' briefing in *Bus. Asset. Relocation, Inc.*, which occurred between June and August 2014. Indeed, Defendants' briefing expressly addressed the BCTC's role in negotiating and executing PLAs. In addition, whether the BCTC negotiates PLAs is not dispositive as to the second factor for determining whether the BCTC is a "labor organization." As the BCTC argued in *Bus. Asset. Relocation, Inc.*, it "negotiates many PLAs, [but its] role is to facilitate the negotiation of one agreement that recognizes the affiliate not the BCTC, as the exclusive bargaining representative of employees." *See Bus. Asset. Relocation, Inc.*, Case No. 1:14-cv-00098, ECF No. 36 at 3-4. In

---

[6]     A search of the United States Department of Labor website reveals that the BCTC (file number 045-420) has filed LM-2 reports since *at least* 2000.

any event, the BCTC's involvement with PLAs has no bearing on the first factor, *i.e.*, whether employees participate in the organization.

What was true a few years ago when the BCTC briefed and argued *Bus. Asset Relocation, Inc.* remains so today—the BCTC is not a "labor organization" and, therefore, the Court lacks federal question jurisdiction.

B. **The Court Has No Federal Question Jurisdiction Over Claims Against Tortfeasor LaBarbera.**

The state-law tort causes of action pled against Mr. LaBarbera do not provide a basis for federal jurisdiction for two reasons.

*First,* because the BCTC is not a "labor organization" as that term is defined by 29 U.S.C. § 152, Mr. LaBarbera, the BCTC's President, is not an "agent" of any "labor organization" within the scope of the statute sufficient to confer federal question jurisdiction. *See* 29 U.S.C. § 185.

*Second*, even if the BCTC were a "labor organization," the federal statutes upon which Defendants based federal question jurisdiction provide *no private right of action* against individuals or individual union officers. *See* 29 U.S.C. § 187; *R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-22-1, I.L. G.W.U.*, 789 F. Supp. 127, 133 (S.D.N.Y. 1992) (holding that Section 303 of the LMRA creates no individual liability); *Prater v. United Mine Workers of Am. Districts 20 & 23*, 793 F.2d 1201, 1206 (11th Cir. 1986); *Iodice v. Calabrese*, 345 F. Supp. 248, 270 (S.D.N.Y. 1972) (holding union officers are not subject to money judgment under Section 303 causes of action), *aff'd in part, rev'd in part*, 512 F.2d 383 (2d Cir. 1975); *see also Bus. Asset. Relocation, Inc. v. Teamsters Local 814*, No. 14-CV-0098 (RRM) (VMS) (ECF No. 32 at 17) (LaBarbera brief arguing that claims

brought against LaBarbera under Section 303 of the LMRA must be dismissed because "there is no [private] right of action against individuals or individual union officers" and "Section 303 creates no individual liability).

### C. **Plaintiff's Claims Are Not Preempted Under LMRA Section 301 Because They Are Not Substantially Dependent on the Terms of a Collective Bargaining Agreement.**

Defendants' argument under LMRA Section 301 fails for another reason:  the state-law claims do not assert a violation of a contract or otherwise require interpretation of a contract. Section 301 confers federal jurisdiction for "[s]uits for violation of contracts between an employer and labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).  The Supreme Court repeatedly has held that LMRA Section 301 only preempts state-law claims that are "substantially dependent upon analysis of the terms of a [collective bargaining] agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  Where "resolution of the state-law claim does not require construing the collective-bargaining agreement," or only tangentially involves a provision of the CBA, the state-law claim is *not* preempted. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988).  Indeed, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078, 129 L. Ed. 2d 93 (1994).

Here, the Complaint does *not* assert a cause of action for a violation of the PLA or any other contract.  Plaintiff merely referenced the PLA in its Complaint for background purposes to provide proper context to understand the parties' present dispute.  Plaintiff has pursued PLA violations in separate arbitration proceeding(s).  (Compl. at ¶ 86.)  The claims at issue here relate

to actions that Defendants have taken as to a *different* portion of the Hudson Yards project—the WRY and 50 Hudson Yards—which all parties agree is *not* governed by the PLA. Indeed, Plaintiff's tortious interference and defamation causes of action are based on rights created by New York common law, not the PLA or any other collective bargaining agreement.

Defendants wrongly contend that the state-law claims require interpretations of the PLA. (Removal Petition at ¶ 6.)   Defendants incorrectly apply *Allis-Chalmers* in asserting that Plaintiff's causes of action are preempted because they are somehow "'inextricably intertwined' with consideration of the labor contract." *See* ECF No. 19 at 2 (*citing Allis-Chalmers v. Lueck*, 471 U.S. 202, 213 (1985)).   While the preemptive effect of LMRA Section 301 *may* extend to suits alleging liability in tort, rather than just suits alleging contractual violations, *see* ECF No. 19 at 2, a court must conclude that the inquiry is "substantially dependent upon analysis of the terms of the collective bargaining agreement." 471 U.S. at 220.

Those circumstances are *not* present here.   The claim for interference with prospective economic relations involves potential new contracts with labor unions, not the PLA. Defendants' pre-motion letter does not identify any provision of the PLA that would need to be interpreted to decide this claim.   As to the defamation claim, Defendants' pre-motion letter argued that the parties will need to address the truth or falsity of statements that Plaintiff "paid billions in wages and benefits to union workers" and "never failed to make a payment of wages or benefits at the PLA project." ECF No. 19 at 2.   But these are factual propositions which do not depend on an interpretation of the PLA, and Defendants do not identify any provision of the PLA that will need to be interpreted.   As the Second Circuit has held, when a court need only reference a CBA, such as to determine the truth or falsity of a claim, the claim is not preempted.

020019-494/00127763-1                    16

*See Foy v. Pratt & Whitney Group*, 127 F.3d 229, 234 (2d Cir. 1997) (remanding state-law negligent misrepresentation claim despite the fact that defendant cited to and the court analyzed several portions of the CBA and noting that even "consult[ing] the CBA" to reach a legal conclusion does not, in of itself, warrant preemption).[7]

The elements of Plaintiff's causes of action are not intertwined with, nor do they require any interpretation of the PLA or any other collective bargaining agreement. Defendants simply have not—and cannot—point to any provision of the PLA or any other collective bargaining agreement with which the Court must grapple or interpret to assess the legal merits of Plaintiff's causes of action. When, as here, state law—not a collective bargaining agreement—provides for the gravamen of the cause of action, LMRA Section 301 does not preempt.[8]

### D. **Plaintiff's Causes of Action Are Not Preempted Under LMRA Section 303 Because They Do Not Relate To Secondary Activity.**

Defendants contend that LMRA Section 303 completely preempts Plaintiff's causes of action for tortious interference with prospective economic advantage and defamation.  (*See* Removal Petition at ¶¶ 8-10.) Section 303 provides a federal claim for unfair labor practices by "any labor organization" directed at a so-called "secondary" employer. *See* 29 U.S.C. § 187 (conferring jurisdiction); *id.* § 158(b)(4) (identifying prohibited labor practices).  A secondary

---

[7]    Without conceding as much (*see supra*, § III), we assume for the purposes of this argument and, *infra*, § V, that the PLA is a collective bargaining agreement.

[8]    *See also Smith-Emery Co. v. Int'l Union of Operating Eng'rs Local Union No. 12*, 17-cv-02984 (AFMx), 2017 WL 3634590 (C.D. Cal. Aug. 21, 2017) (finding intentional interference with prospective economic advantage claim was not preempted under Section 301 because the allegations did not require interpretation of the relevant collective bargaining agreements, even though the court may have to "look" or "consult" the CBA); *see also Gay v. Carlson*, 60 F.3d 83, 88 (2d Cir. 1995) (defamation claim not preempted by the Railway Labor Act, which has the same preemption standards as Section 301 of the LMRA, because the dispute could not be "conclusively resolved" by interpreting the CBA and "involve[d] rights that exist independent of the CBA").

employer is "an employer with whom [the labor organization] does not have a dispute." *NLRB v. Local 3 Int'l Brotherhood of Elec. Workers*, 730 F.2d 870, 875-76 (2d Cir. 1984); *NLRB v. Local 3 Int'l Brotherhood of Elec. Workers*, 471 F.3d 399, 402 (2d Cir. 2006). Even assuming that the BCTC satisfies the definition of "labor organization" (which it does not), there is no "secondary boycott" or "secondary activity" allegation underlying the causes of action.

Plaintiff alleges that Defendants sought to encourage its affiliated trade union members not to enter into TLAs with Plaintiff, and instead pressure Plaintiff to sign a PLA for the remaining portions of Hudson Yards—through bullying tactics toward the BCTC's affiliated union members and defamatory public statements. (*See* Complaint at ¶¶ 9, 89, 90.) This is illegal tortious conduct—*not* secondary activity within the purview of NLRA Section 8(b)(4) and 29 U.S.C. § 187. At this stage of the case, because the Court must accept Plaintiff's factual pleadings, Defendants fail to meet *their* burden of establishing federal question jurisdiction. *See, supra, Anwar,* 676 F. Supp.2d 285 (S.D.N.Y. 2009).

It would be secondary and "arguably prohibited" by NLRA Section 8(b)(4) if the tort claims were premised on allegations, for example, that the BCTC threatened trade contractors with job actions unrelated to the Hudson Yards project or induced and encouraged their employees to engage in strikes or slow-downs on *other* projects for the purpose of forcing or requiring them to cease doing business with Plaintiff. Here, the gravamen of the causes of action is *primary* activity directed towards HYC. The BCTC's affiliated trade union members, because they were parties to the PLA with HYC and performed work at the Hudson Yards project, are in a primary, not secondary, dispute with HYC. The BCTC's attempt to pressure the unions not to enter into a TLA for the remainder of the Hudson Yards project is thus primary, not secondary,

activity.  Accordingly, Plaintiff's causes of action are not completely preempted under LMRA Section 303 and the case should be remanded.[9]

### E. There Is No Federal Question Jurisdiction Over Plaintiff's Defamation Cause of Action.

Plaintiff's state-law defamation cause of action is not preempted by federal law because Plaintiff has adequately pled actual malice and damages.  In *Linn v. United Plant Guard Workers*, 383 U.S. 53, 63 (1966), the Supreme Court held that a state-law defamation cause of action may proceed in the context of a labor dispute so long as the alleged defamatory statement was made with actual malice and caused Plaintiff damage.

Here, Plaintiff sufficiently alleges both elements.  (*See* Compl. at ¶¶ 90-92, 95-97.) Specifically, Plaintiff alleges that BCTC and Mr. LaBarbera acted with actual malice and intent to harm Plaintiff in making false public statements regarding Plaintiff —*e.g.,* calling Plaintiff "union busters," decrying that HYC "don't [*sic*] want to pay benefits," referring to the work site as a "prison," protesting that Plaintiff thinks union members are "not good enough to build Hudson Yards." (*Id.* at ¶¶ 95, 97, 99.)  Plaintiff further alleges that it has "been damaged" as a result of Defendants' defamatory comments.  (*Id.* at ¶ 103.)  Plaintiff's state-law defamation cause of action is thus not preempted and should be remanded to state court.[10]

---

[9]  The fact that the BCTC and/or Mr. LaBarbera may have *also* engaged in secondary activity violating LMRA Section 303 and/or the NLRA does not confer subject-matter jurisdiction because those acts do not form the basis for either cause of action as pled in the Complaint.

[10]  State-law defamation suits in New York state court routinely proceed against unions and their officers—even arising out of labor disputes—without being preempted by federal law. *See, e.g., Montana v. Smith*, 92 A.D.2d 732 (1983) (permitting case to proceed on the merits where plaintiff-owner of taxi company alleged union official made slanderous statements regarding plaintiff's alleged mafia affiliations during a labor dispute); *Wolf St. Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 487 N.Y.S.2d 442 (1985) (appellate court affirming jury verdict finding that defendant union defamed employer by distributing handbills containing false statements regarding employer's union animus).

## CONCLUSION

For the foregoing reasons, the Court lacks subject-matter jurisdiction over Plaintiff's tort causes of action and this case should be remanded to New York State Supreme Court.

Dated:       April 30, 2018
               New York, New York

Respectfully submitted,

**WACHTEL MISSRY, LLP**

By:

William B. Wachtel
Steven J. Cohen
Evan Weintraub
Marc Litt

One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
(212) 909-9500

COVINGTON & BURLING LLP
Alan Vinegrad
C. William Phillips
Philip A. Irwin

620 8th Avenue
New York, New York
(212) 841-1000

*Attorneys for Plaintiff*