UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

HUDSON YARDS CONSTRUCTION LLC,                  : Civil Action No.
                                   Plaintiff,   : 18-cv-2376 (GHW)(DF)
                                                :
          -against-                             :
                                                :
BUILDING AND CONSTRUCTION TRADES                :
COUNCIL OF GREATER NEW YORK AND                 :
VICINITY and GARY LaBARBERA,                    :
                                                :
                                   Defendants.  :
-------------------------------------------------------------------------X


### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND


COLLERAN, O'HARA & MILLS L.L.P.
Attorneys for Defendants
100 Crossways Park Drive West, Suite 200
Woodbury, New York 11797
(516) 248-5757
cop@cohmlaw.com


Of Counsel:

CAROL O'ROURKE PENNINGTON
MICHAEL DENNIS BOSSO

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

    I. THE BCTC .............................................................................................................. 3

    II. EASTERN RAIL YARD PLA ............................................................................... 3

    III. HYC'S COMPLAINT .......................................................................................... 5

ARGUMENT ................................................................................................................... 6

    I. DEFENDANTS HAVE SATISFIED THEIR BURDEN OF DEMONSTRATING BY COMPETENT PROOF THAT REMOVAL IS APPROPRIATE UNDER THE COMPLETE PREEMPTION AND ARTFUL PLEADING DOCTRINES. ............................................... 6

        *A.*    *Removal is Appropriate as Federal Question Jurisdiction Exists and the Causes of Action in the Complaint are Completely Preempted by LMRA §§301 and 303.* ............... 6

        *B.*    *Pursuant to the Artful Pleading Doctrine, the Court Must Look Beyond the Face of the Complaint to Determine the True Nature of the Underlying Action.* ......................... 7

        *C.*    *Defendants Have Satisfied Their Burden of Demonstrating that Federal Question Jurisdiction Exists.* ............................................................................................ 8

    II. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS COMPLETELY PREEMPTED BY LMRA §303 AND IS PROPERLY REMOVED TO FEDERAL COURT ..................... 10

        *A.*    *The Complaint is Subject to Complete Preemption Under Section 303 of the LMRA.* ................................................................................................................. 10

        *B.*    *The BCTC is a Labor Organization to Which §303 Applies.* ............................. 12

        *C.*    *The Complaint Alleges Secondary Activity Preempted by §303.* ........................ 17

    III. PLAINTIFF'S COMPLAINT IS PREEMPTED BY LMRA §301 AND IS PROPERLY REMOVED TO FEDERAL COURT ........................................................................... 18

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

Allis-Chalmers Corp. v. Lueck,
    471 U.S. 202 (1985) ................................................................................ passim

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .................................................................................... 9

Avco Corp. v. Aero Lodge No. 735,
    390 U.S. 557 (1968) ................................................................................... 18

Ben. Nat'l Bank v. Anderson,
    539 U.S. 1 (2003) ........................................................................................ 7

Bldg. & Constr. Trades Council v. Associated Builders & Contrs.,
    507 U.S. 218 (1993) ................................................................................... 17

Caterpillar, Inc. v. Williams,
    482 U.S. 386 (1987) ........................................................................... 6, 19-20

Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100,
    421 U.S. 616 (1975) ................................................................................... 16

Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,
    463 U.S. 1 (1983) ..................................................................................... 6, 7

Lingle v. Norge Div. of Magic Chef,
    486 U.S. 399 (1988) ..............................................................................19, 22

Metro. Life Ins. Co. v. Taylor,
    481 U.S. 58 (1987) ............................................................................ 6, 7, 18

NLRB v. Cabot Carbon Co.,
    360 U.S. 203 (1959) .............................................................................. 12-13

NLRB v. Retail Store Emps. Union,
    447 U.S. 607 (1980) ................................................................................... 18

San Diego Building Trades v. Garmon,
    359 U.S.236 (1959) ...................................................................................17

Teamsters, Chauffeurs & Helpers Union v. Morton,
    377 U.S. 252 (1964) ................................................................................... 11

Textile Workers Union of Am. v. Lincoln Mills of Ala.,
    353 U.S. 448 (1957) ................................................................................... 19

Woelke & Romero Framing v. NLRB,
  456 U.S. 645 (1982) ............................................................................................ 16

**Federal Court Opinions**

Allstate Interiors, Inc. v. United Bhd. of Carpenters & Joiners of Am. ,
  10 Civ. 2861, 2010 U.S. Dist. LEXIS 94509 (S.D.N.Y. 2010) ......................... 11, 18

Atchley v. Heritage Cable Vision Assocs.,
  101 F.3d 495 (7th Cir. 1996) ............................................................................ 21

BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers,
  132 F.3d 824 (1st Cir. 1997) ........................................................................... 7, 10

Bldg. Indus. Elec. Contrs. Ass'n v. City of N.Y.,
  10 Civ. 8002, 2011 U.S. Dist. LEXIS 86759 (S.D.N.Y. 2011) ............................. 17

Burton v. GMC,
  95-cv-1054, 2008 U.S. Dist. LEXIS 62758 (S.D. Ind. 15, 2008) ......................... 22

Bus. Asset Relocation, Inc. v. Teamsters Local 814,
  14-CV-0098, 2015 U.S. Dist. LEXIS 39524 (E.D.N.Y. Mar. 27, 2015) ............... 14

Cespuglio v. Ward,
  03 Civ. 8603, 2004 U.S. Dist. LEXIS 8586 (S.D.N.Y. May 12, 2004) ................. 7

Control Network Commun. Inc. v. IBEW, Local Union No 236,
  145 F. Supp. 161 (N.D.N.Y. 2015) .................................................................... 19

Federated Dep't. Stores, Inc. v. Moitie,
  52 U.S. 394, 397 n.2 (1981) ............................................................................... 7

Foy v. Pratt & Whitney Grp.,
  127 F.3d 229 (2d Cir. 1997) .............................................................................. 21

Gay v. Carlson,
  60 F.3d 83 (2d Cir. 1995) ............................................................................. 21, 22

Gover v. Speedway Super Am., L.L.C.,
  254 F. Supp. 2d 695 (S.D. Ohio 2002) ............................................................... 8

Iodice v. Calabrese,
  512 F.2d 383 (2d Cir. 1975) ......................................................................... 11, 18

Johnson v. Rancho Santiago Cmty. Coll. Dist.,
  623 F.3d 1011 (9th Cir. 2010) ........................................................................... 17

Korthas v. Ne. Foods, Inc.,
  03-CV-552, 2006 U.S. Dist. LEXIS 18846 (N.D.N.Y. Feb. 27, 2006) ................. 19

Marcus v. AT&T Corp.,
    138 F.3d 46 (2d Cir. 1998) ............................................................................... 6

McNutt v. Gen. Motors Acceptance Corp.,
    298 U.S. 178, 189 (1936) ................................................................................. 8

Monarch Long Beach Corp. v. Soft Drink Workers, Local 812,
    762 F.2d 228 (2d Cir. 1985) ...................................................................... 11, 18

Nelson v. Local 1181-1061, Amalgamated Transit Union,
    652 F. App'x 47 (2d Cir. 2016) ..................................................................... 20

NLRB v. Metallic Bldg. Co.,
    204 F.2d 826 (5th Cir. 1953) ......................................................................... 14

Panczykowski v. Laborers' Int'l,
    2001 U.S. App. Lexis 1282 (2nd Cir. 2001)....................................................24

Paramount Enters. v. Laborers E. Region Org. Fund,
    13-3295, 2015 U.S. Dist. LEXIS 132045 (D.N.J. Sept. 22, 2015) ......................... 11

Phx. Eng'g, Inc. v. MK-Ferguson of Oak Ridge Co.,
    966 F.2d 1513 (6th Cir. 1992) ....................................................................... 17

Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.,
    64 F. Supp. 3d 459 (E.D.N.Y. 2014) ............................................................... 8

Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co.,
    126 F.3d 61 (2d Cir. 1997) ............................................................................. 7

R.G. Barry Corp. v. Mushroom Makers, Inc.,
    612 F.2d 651 (2d Cir. 1979) ........................................................................... 8

Salamea v. Macy's E., Inc.,
    426 F. Supp. 2d 149 (S.D.N.Y. 2006) ............................................................. 6

Schepis v. Local Union No. 17, United Bhd. of Carpenters & Joiners,
    989 F. Supp. 511 (S.D.N.Y. 1998) ................................................................. 7

Sharp v. Omaha Bldg. & Constr. Trades Council,
    821 F.2d 516 (8th Cir. 1987) ......................................................................... 14

Silverman v. Virelli,
    2012 U.S. Dist. Lexis 14453 (Dist. N.J. 2012)...................................................11

Smart v. Local 702 IBEW,
    562 F.3d 798 (7th Cir. 2009) ......................................................................... 11

Sullivan v. Am. Airlines, Inc.,
    424 F.3d 267 (2d Cir. 2005) ......................................................................... 23

Travelers Indem. Co. v. Sarkisian,
    794 F.2d 754 (2d Cir.) .................................................................................................. 7

United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square,
    30 F.3d 298 (2d Cir. 1994) .......................................................................................... 8

Vera v. Saks & Co.,
    335 F.3d 109 (2d Cir. 2003) ............................................................................... passim

**United States Code**

28 U.S.C. § 1441 (2012) ...................................................................................................... 6

29 U.S.C. §152(5) (2012) ............................................................................................. 13, 16

29 U.S.C. §158(b)(4) (NLRA Section 8(b)(4)) ........................................................... passim

29 U.S.C. §158(e) (2012) (NLRA Section 8(b)(e)) ............................................................ 16

29 U.S.C. §158(f) (2012) (NLRA Section 8(b)(f)) ............................................................. 16

29 U.S.C. §142 (2012) (LMRA Section 501) .................................................................... 12

29 U.S.C. §152 (1) (2012) ................................................................................................ 18

29 U.S.C. §185(a) (2012) (LMRA Section 301) ......................................................... passim

29 U.S.C. §501(3) (2012) ................................................................................................. 12

29 U.S.C. §187 (LMRA Section 303) .......................................................................... passim

**Other**

Bldg. & Constr. Trades Council of Del. & Thomas E. Waters,
    215 N.L.R.B. 624 (1974) ........................................................................................ 13, 16

Bldg. & Constr. Trades Council Of Reading & Berks County & Gen. Plumbing & Heating Co. ,
    155 N.L.R.B. 1184 (1965) ...................................................................................... 13, 16

In the Matter of Dun & Bradstreet, Inc., Empl'r & the Am. Fed'n OF Labor,
    80 N.L.R.B. 56 ............................................................................................................. 13

In the Matter of Olin Indus., Winchester Repeating Arms Co.,
    85 N.L.R.B. 396 ........................................................................................................... 13

In the Matter of Stiefel Construction Corporation and United Steelworkers of America, C. I. O.,,
    64 N.L.R.B. 565 (1945) ............................................................................................... 14

IBEW Local 1 (E. Smith Plumbing Co.),
    164 N.L.R.B 313 (1967)164 N.L.R.B. 313 (1967) ............................................... 13, 16

J.S. Abercrombie Co.,
    83 N.L.R.B. 524 ........................................................................................................... 13

Local 3, International Brotherhood of Electrical Workers, AFL-CIO; Building and Construction Trades Council of Greater New York, AFL-CIO (Di Gangi Electrical Services),
    130 N.L.R.B. 1458 (1961) ...................................................................................... 14

Omaha Bldg. & Constr. Trades Council (Melvin Simon & Associates),
    284 N.L.R.B. 328 (1987) ..................................................................................... 13-14

S.F. Bldg. & Constr. Trades Council,
    297 N.L.R.B. 1050 (1990) ...................................................................................... 13

Plumbers Local 388 (Charles Featherly Construction Co.),,
    252 N.L.R.B. 452 (1980) ...................................................................................... 14

Washoe Investment Co., Inc., d/b/a Crystal Bay Club and United Trades Council of AFL-CIO Affiliated Unions,
    169 N.L.R.B. 838 (1968) ...................................................................................... 13

## PRELIMINARY STATEMENT

Defendants, The Building and Construction Trades Council of Greater New York and Vicinity ("BCTC") and its President Gary LaBarbera ("LaBarbera") (collectively referred to herein as "Defendants"), through its attorneys Colleran, O'Hara, & Mills L.L.P. submit this Memorandum of Law in Opposition to Plaintiff's, Hudson Yards Construction LLC ("HYC" or "Plaintiff"), Motion to Remand. The underlying Complaint is properly subject to removal as it raises federal questions under §§301 and 303 of the Labor Management Relations Act ("LMRA") that are subject to the complete preemption doctrine. It is uncontested that this matter arises from a labor dispute between HYC and the BCTC concerning the construction of the development at Hudson Yards. While the Complaint only asserts state law claims on its face, the underlying nature of Plaintiff's claims arise from federal law and the "artful pleading" doctrine prevents Plaintiff from avoiding federal question jurisdiction.

Notably, Plaintiff does not deny that complete preemption may apply under §303, but opposes removal on the theory that: 1) the BCTC and LaBarbera are not a labor organization or agent of a labor organization; and 2) the conduct alleged in the Complaint is not subject to a private right of action under §303 of the LMRA because it alleged primary activity that is not prohibited by 29 U.S.C. §158(b)(4). However, Plaintiff's theory in opposition to removal is contradicted by its own Complaint allegations. The Complaint and the Project Labor Agreement ("PLA") attached to it establish that the BCTC meets the definition of a labor organization within the meaning of the LMRA because HYC negotiated the PLA with the BCTC, filed grievances under the PLA, and dealt with the BCTC on those grievances and other matters. The alleged conduct attributed to the BCTC in the Complaint falls under the preemptive reach of LMRA §303. Plaintiff alleges a "secondary boycott" when it alleges that Defendants conduct threatened and coerced unions and

1

contractors (secondaries) so they would refuse to deal with HYC (primary). These are allegations of the legal elements of classic secondary boycott activity within the meaning of the NLRA and LMRA.

Plaintiff's Complaint is also subject to removal pursuant to §301 of the LMRA. The PLA for the Eastern Rail Yards portion of the Hudson Yards Development ("ERY") is a labor agreement subject to §301. Over half of the allegations in the Complaint allege the existence of the ERY PLA, the alleged breaches of that PLA by Defendants, the Defendants alleged failure to enforce the PLA, and the alleged damage caused by the alleged breaches. Plaintiff goes as far as summarizing the terms and conditions of the PLA and attaching a copy of it to the Complaint. Now, however, Plaintiff seeks to avoid complete preemption under §301 by arguing its allegations regarding the PLA and alleged breach are only asserted as background to its claims and are, essentially, irrelevant to its claims since there is no breach of contract claim. However, the law is clear that regardless of whether the state claims are set forth in contract or tort, when the claim is inextricably intertwined with a labor agreement, §301 preempts the matter.

HYC has intertwined the PLA with its allegations of substantial harm caused by the Defendants. In fact, this lawsuit is HYC's thinly veiled attempt to: 1) force and compel compliance with the obligations set forth in the PLA instead of resorting to the PLAs grievance and arbitration procedure; 2) require this Court to interpret and apply the PLA and the economic incentives contained in the PLA in connection with its claim for damages; and 3) force and compel affiliated local unions to accept the concept of and terms of "trade labor agreements", and to provide the same economic incentives as those set forth in the ERY PLA, or subject the BCTC to further litigation. More than mere consultation with the ERY PLA is not only required, but, in fact, is requested by the Plaintiff itself.

As set forth below, Defendants have met their burden of demonstrating by competent proof that federal question jurisdiction exists and removal is proper.[1]

## STATEMENT OF FACTS

### I.  THE BCTC

The BCTC consists of approximately 50 local affiliates of 15 national and international unions representing approximately 100,000 construction workers in the five boroughs of New York City. The structure and business of the BCTC is mandated by its Constitution and Bylaws. See Declaration of Carol O'Rourke Pennington, ("Pennington Dec.") at Ex. "A". The Preamble of the Constitution and Bylaws sets forth the objects of the BCTC, which includes, inter alia, the improvement of working conditions, training, work opportunities and the promotion of industrial peace through collective bargaining. Id. at p. 2. Democratically elected officials from local unions and district councils serve as members of the BCTC's Executive Board. Id. at pp. 9-10. Each affiliated local union selects delegates from its local union members to represent the local at the BCTC. Id. at pp. 3-5. The number of delegates each local union or district council sits is based on the number of members in the local. Id. Local unions and district councils pay per capita dues to the BCTC based upon the size of their memberships. Id. at pp. and 11.

### II. EASTERN RAIL YARD PLA

HYC's Complaint alleges that when HYC undertook construction of Hudson Yards it sought to commit to transparent labor relations and to work cooperatively to produce an extraordinary project in "an efficient and effective manner" through a PLA negotiated with the

---

[1] Defendants recognize that diversity jurisdiction, on its own, does not provide a basis for removal. Defendants contend that this Court has federal question jurisdiction over the Complaint, without regard for diversity of the parties. The Verified Petition for Removal raised diversity of the parties in addition to federal question jurisdiction based on allegations pled in the Complaint. Plaintiff clarified the nature of the Plaintiff and its members by declaration subsequent to the Verified Petition and in connection with its Motion to Remand.

BCTC. See Complaint at ¶3. The ERY Project continues to this day and the work being performed continues to be covered by the PLA. Complaint at ¶1. The ERY PLA covers terms and conditions of employment for construction workers including but not limited to wages, hours, benefits, holidays, dispute resolution procedures, no strike language, and more. See id. at Ex. "B." The Complaint and the ERY PLA are clear that the ERY PLA was negotiated and entered into between HYC and the BCTC. Id. at ¶3 and at Ex. "B" pp. 5-6.

The ERY PLA includes the BCTC in the definition of "Unions". See Complaint at Ex. "B" p.7. The ERY PLA defines "Local Union" as a BCTC affiliated union that is signatory to the PLA. Id. Article 4 of the ERY PLA is entitled "Union Recognition and Employment" and the clause recognizes the "Unions," which includes the BCTC, as the "exclusive bargaining representatives of all craft employees who are performing the Project Work." Id. at p.14.

HYC and the BCTC also negotiated a provision on work stoppages and lockouts that prohibited strikes, picketing, work stoppages, and other forms of disruptive activity on Project Work. See Complaint at Ex. "B" Art. 7, p.19. Additionally, HYC and the BCTC negotiated an expedited arbitration procedure in the event of an alleged violation of the no strike-no lockout clause wherein the BCTC must receive notice of any alleged violation and shall participate in the expedited arbitration hearing. Id. at Art. 7, §4, pp.20-22. The PLA also provides for a labor management committee, which is jointly chaired by the BCTC and HYC and is intended to be a forum to deal with ongoing labor relations issues for the duration of the project. Id. at Ex. "B", Art. 8, p. 22. Article 9 of the PLA sets forth a grievance and arbitration procedure for the resolution of grievances that includes notice to, and participation by, the BCTC at steps 2 and 3. Id. at Art. 9, pp. 23-25. Similarly, Article 10 requires all parties to follow the procedures of the BCTC's New

York Plan for the Settlement of Jurisdictional Disputes and requires all contractors to make work assignments in accordance with the decisions of the BCTC's New York Plan. Id. at Art. 10, p. 26.

Article 11 of the PLA identifies the wage rates to be paid to employees covered by the PLA. See Complaint at Ex. "B", Art. 11, p. 27. Article 12 binds contractors to jointly trusteed employee benefit plans, requires timely payments of contributions to the benefit funds, and addresses the collection of delinquent contributions. Id. at Article 12, pp. 27-30. The PLA also sets forth hours of work, the standard work week, meal periods, coffee breaks, start times, starting locations, overtime, shifts and shift pay, holidays and holiday pay. See id. at Ex. "B", Art. 12, pp. 30-33. Rules for drug and alcohol testing on the job site, safety and security requirements, and rules for staffing work on temporary systems were also negotiated between the BCTC and HYC. Id. at Art. 13, pp.34-36.

The PLA is signed by HYC and the BCTC, as well as affiliated Local Unions of the BCTC.

## III. HYC'S COMPLAINT

On March 5, 2018, HYC filed the underlying Complaint in state court alleging, on its face, causes of action against the BCTC and LaBarbera, as President of the BCTC, for tortious interference with prospective economic advantage and defamation. See Complaint at ¶s 87-104. The Complaint alleges that a PLA is a "contract between owners, contractors, or their agents (such as a construction manager), on the one hand, and trade contractors and representatives of organized labor on the other." See Complaint at ¶23. In its Complaint, HYC admits that the PLA was negotiated between HYC and the BCTC and includes provisions on wages, hours, and terms and conditions of employment. See id. at ¶s 25, 28 and 29.

The Complaint includes legal conclusions regarding the status of the BCTC: (a) the BCTC is not a "labor union"; (b) "[t]he BCTC is not a signatory to any collective bargaining agreement because it is not a labor union, in that it does not represent any group of trade

5

employees/workers/craftsmen"; and (c) the "BCTC cannot negotiate wages or working conditions, or otherwise bind any union without a separate and specific authorization and assent and agreement by said union". Complaint at ¶'s 13 and 24. These conclusions are contradicted by the allegations of Plaintiff's own Complaint, its PLA Exhibit, as well as the law. These legal conclusions are not controlling or dispositive of the Plaintiff's challenge to removal. [2]

## ARGUMENT

## I. DEFENDANTS HAVE SATISFIED THEIR BURDEN OF DEMONSTRATING BY COMPETENT PROOF THAT REMOVAL IS APPROPRIATE UNDER THE COMPLETE PREEMPTION AND ARTFUL PLEADING DOCTRINES.

### A. Removal is Appropriate as Federal Question Jurisdiction Exists and the Causes of Action in the Complaint are Completely Preempted by LMRA §§301 and 303.

An action may be removed to federal court pursuant to 28 U.S.C. § 1441 if the plaintiff's well-pleaded complaint presents a federal question. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). "Removal is appropriate when a state court action could originally have been filed in federal court." Id. at 389; Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 19 n. 18 (1983).  Where Congress so completely pre-empts a particular area of law, then any civil complaint raising this select group of claims is necessarily federal in character, even when the complaint does not refer to federal law. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, (1987). Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003); Marcus v. AT&T Corp., 138 F.3d 46, 53 (2d Cir. 1998); see also Salamea v. Macy's East, Inc., 426 F. Supp. 2d 149, 153 (S.D.N.Y. 2006). As discussed below, §§301 and 303 of the LMRA are the types of federal statutes that completely preempt these state law claims for relief.

---

[2] Plaintiff's claims that Defendants have admitted that it is not a labor organization is duplicitous at best, ignores the law, and is contrary to the very facts it alleged in its Complaint. For the reasons set forth in Statement of Facts and Section II B of this Memorandum, the BCTC is a labor organization, and as such, §§301 and 303 of the LMRA provide for complete preemption of Plaintiff's claims.

**B.  Pursuant to the Artful Pleading Doctrine, the Court Must Look Beyond the Face of the Complaint to Determine the True Nature of the Underlying Action.**

Generally, removability is determined under the "well-pleaded complaint" rule and is based on plaintiff's own statement of its claim. See Franchise Tax Board, 463 U.S. at 9-10. However, a plaintiff cannot avoid federal question jurisdiction through artful pleading and the omission of necessary federal questions. Travelers Indemnity Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986) cert. denied, 479 U.S. 885 (1986); Franchise Tax Board, 463 U.S. at 22. The artful pleading doctrine is a limited exception to the well-pleaded complaint rule where courts are to look "beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state law colors, and to act accordingly." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir. 1997)(citing Federated Dep't. Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981)). The doctrine applies to causes of action where Congress has mandated the 'complete preemption' of a specific area of law. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003); Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co., Inc., 126 F.3d 61, 66 (2d Cir. 1997); Schepis v. Local Union No. 17, United Bhd. of Carpenters & Joiners, 989 F. Supp. 511, 514 (S.D.N.Y. 1998). The United States Supreme Court recognizes "complete preemption" in causes of action under the LMRA and the Employee Retirement Income Security Act ("ERISA"). Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7 (2003); Cespuglio v. Ward, 03-civ-8603, 2004 U.S. Dist. LEXIS 8586, *8 (S.D.N.Y. May 12, 2004).

Here, Plaintiff's Complaint raises federal jurisdiction under the LMRA. At the heart of the Complaint is a labor dispute between HYC and the BCTC and its affiliated unions that commenced during construction of the ERY ("Phase 1") of the Hudson Yards Development, governed by the

ERY PLA. The dispute continues during HYC's efforts to secure construction contracts for Phase II, the Western Rail Yards and 50 Hudson Yards projects. The essence of HYC's Complaint is that the BCTC has allegedly engaged in conduct that has threatened and coerced secondary entities to cease doing business with HYC, the primary. HYC's damages are based on its self-serving expectation that it is entitled to the same economic incentives contained in the ERY PLA that it can not obtain from local unions on Phase II through "trade labor agreements."

It is important to point out that, while the BCTC is not required to establish HYC's motive for artfully pleading state law causes of action in an effort to avoid jurisdiction of federal courts, it is clear that HYC seeks remedies in state court that are not permitted under federal labor law. HYC seeks punitive damages as well as liability and damages against the BCTC President in his official capacity, both of which are prohibited under §§301 and 303 of the LMRA.

### C. Defendants Have Satisfied Their Burden of Demonstrating that Federal Question Jurisdiction Exists.

Defendants, as the parties seeking removal, bear the burden of establishing their right to a federal forum by "competent proof." R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979) (quoting McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)); United Food & Commercial Works Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

Defendants submit that the Complaint allegations raise federal question jurisdiction despite HYC's purposeful attempt to avoid them. Defendants also rely on the Petition to Remove, the pre-motion conference letters, and the Constitution and Bylaws of the BCTC, annexed as an Exhibit to the Pennington Dec.[3] to demonstrate federal question jurisdiction. Defendants submit

---

[3] Courts have accepted and considered relevant documents attached by Defendants as exhibits. See, e.g., Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of N.Y., Inc., 64 F. Supp. 3d 459, 463, fn. 1 (E.D.N.Y. 2014)(citing) accepting the submission of various plan documents as exhibits to establish complete preemption). The district court

"competent proof" establishes that employees participate in the BCTC, that the BCTC deals with employers and that Plaintiff's causes of action arise under federal law that completely preempts the state law causes of action.

HYC argues that the Defendants have not met their burden because the Complaint allegations state that the BCTC is not a labor organization and that Defendants must accept those allegations as true. The allegations cited by Plaintiffs are legal conclusions contradicted by the factual allegations in the Complaint. See Plaintiff's Memorandum of Law in Support of Motion to Remand ("Plaintiff's Memorandum"), at pp. 10-11. Plaintiff's legal conclusions are not entitled to the presumption of truth and do not have to be accepted as such by either this Court or the Defendants. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Plaintiff's argument that Defendants' reliance on the pleadings is an adoption of HYC's legal conclusions on the issue of labor organization status is both wrong and undertaken by Plaintiff because there is no support in fact or law for its position. Defendants have not, and are not required to, adopt unsupported conclusory allegations. In fact, Defendants vigorously challenge the legal conclusion espoused by Plaintiff.

As articulated by the First Circuit;

> . . . a district court confronted with a question of subject matter jurisdiction reviews a plaintiff's complaint not to judge the merits, but to determine whether the court has the authority to proceed. When conducting this inquiry, the court only asks whether the complaint, on its face, asserts a colorable federal claim.

---

has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. The court may consider such evidence without turning the motion into one for summary judgment. Gover v. Speedway Super Am., LLC, 254 F. Supp. 2d 695, 699 (S.D. Ohio 2002).

BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824 (1st Cir. 1997) (internal citations omitted). The removing party simply must establish that a colorable federal claim is raised on the face of the complaint. Defendants have met that burden.

II.     **PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS COMPLETELY PREEMPTED BY LMRA §303 AND IS PROPERLY REMOVED TO FEDERAL COURT.**

   A. *The Complaint is Subject to Complete Preemption Under Section 303 of the LMRA.*

Plaintiff's claim for tortious interference with prospective economic advantage falls within the scope of §303 of the LMRA. Section 303 creates a private right of action for damages brought by any person injured in their business or property as a result of a labor organization, or its agent's, unlawful activity within the prohibition of §8(b)(4) of the NLRA[4].

Section 303 of the LMRA provides:

> **(i)** It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act, as amended [29 USCS § 158(b)(4)].
>
> **(ii)** Whoever shall be injured in his business or property by reason or [of] any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof [29 USCS § 185] without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 USCS § 187.

---

[4] It is submitted that Defendants deny it engaged in the activity that Plaintiff alleges, including, but not limited to, the allegations of threats and coercion. By arguing that these allegations fall within the scope of §303, Defendants merely respond to the characterization of their conduct by Plaintiff, in support of their position on complete preemption by §303, Nothing contained herein is, or should be construed as an admission or waiver of Defendants' denial that will be appropriately addressed more fully in subsequent motion practice.

NLRA §8(b)(4) identifies activities that constitute unlawful secondary activity, including threatening or coercing third parties (secondaries) in order to force any person to cease doing business with another (primary). 29 USC § 158(b)(4). The Plaintiff's conclusory allegations and characterizations of Defendants conduct regarding alleged threats and coercion of local unions and their contractors (secondaries) causing interference with HYC's (primary) prospective labor contracts are precisely the type of allegations preempted by §8(b)(4) for which there is federal question jurisdiction under LMRA §303.

State law has been displaced by §303 of the LMRA. Section 303 completely preempts state-law claims related to secondary boycott activities described in 29 U.S.C. §158(b)(4). See, Teamsters, Chauffeurs & Helpers Union v. Morton, 377 U.S. 252 (1964). Here, the Complaint alleges activity by the BCTC "of the sort that courts have found to be preempted and removable." Allstate Interiors, Inc. v. United Bhd. Of Carpenters & Joiners of Am., 10 Civ. 2861, 2010 U.S. Dist LEXIS 94509 (S.D.N.Y. 2010); see also, Monarch Long Beach v. Soft Drink Workers, Local 812, 762 F.2d 228 (2d Cir. 1985); Iodice v. Calabrese, 512 F.2d 383, 390, fn. 1 (2d Cir. 1975).

This Court, the Seventh Circuit, and the District Court of New Jersey have all found removal proper under §303 where plaintiffs have alleged tortious conduct similar to the conduct alleged by HYC. See Allstate Interiors, Inc., 10 Civ. 2861, 2010 U.S. Dist. LEXIS 94509 (S.D.N.Y. 2010)(alleged tacit threats to prospective general contractors and project sponsors were preempted by §303); Smart v. Local 702 IBEW, 562 F.3d 798, 808 (7th Cir. 2009) (allegations that union coerced owner of sports complex to cease doing business with company was preempted); Paramount v. Laborers Eastern Reg. Org. Fund, 2015 U.S. Dist. Lexis 132045 (Dist. NJ 2015) (alleged defamatory statements regarding treatment of employees and quality of work were preempted); Silverman v. Virelli, 2012 U.S. Dist. Lexis 14453 (Dist. N.J. 2012)(alleged

defamatory handbills and banners, allegations of false light, and invasions of privacy, all fall within purview of §303 are completely preempted.)

Notably, HYC does not question the doctrine of complete preemption and its application to claims arising from §303, only to its application in the instant case.

### B. The BCTC is a Labor Organization to Which §303 Applies.

The BCTC is a labor organization as employees participate in the BCTC through elected delegates and the BCTC deals with employers such as HYC in negotiating terms and conditions of employment and participating in grievances and labor relations issues under PLAs such as the ERY PLA with HYC. Contrary to Plaintiff's argument that the BCTC is not a labor organization,[5] the applicable law, Plaintiff's Complaint, and the ERY PLA itself demonstrate that the BCTC is a labor organization.

Section 501(3) of the LMRA provides:

(3) The terms "commerce," "labor disputes," "employer," "employee," "labor organization," "representative," "person," and "supervisor" shall have the same meaning as when used in the National Labor Relations Act as amended by this Act.

29 USC § 142.

Section 2 of the NLRA defines the term "labor organization" to mean:

any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

29 USC § 152(5). The Supreme Court interprets §2(5) of the NLRA broadly and has held that there is no difference in the definition of "labor organization" under the LMRA and the NLRA. NLRB

---

[5] Notably the only citation Plaintiff offers is to an argument in a case where the BCTC's assertion that it was not a labor organization in an effort to avoid liability under §303 was ultimately unsuccessful. Inexplicably, Plaintiff appears to argue that the BCTC and this Court are perpetually bound to the BCTC's argument in that prior litigation despite the fact that the Court ruled against the BCTC.

v. Cabot Carbon Co., 360 U.S. 203, 212 and 217 (1959). Both the NLRB and the federal courts

have consistently held that building trades' councils are labor organizations within the meaning of

the NLRA.

The NLRB has consistently found that umbrella organizations of labor unions, such as

building and construction trades' councils, qualify as labor organizations under the Act.[6] See San

Francisco Bldg. & Constr. Trades Council, 297 N.L.R.B. 1050, 1051 (1990)(holding that the

council was a labor organization since employees participate through their elected delegates; it

handles grievances; and negotiates project agreements with developers and/or contractors that

incorporate the affiliates collective bargaining agreements). In a case involving a secondary

boycott on the construction of the Gateway Arch in St. Louis, the Board stated in pertinent part:

> ... The Trades Council in the instant cases demonstrated clearly that it was dealing
> directly with the employers herein with regard to a condition of employment (i.e.,
> the presence of non-AFL-CIO members on the job). We find it sufficient that the
> Trades Council is the organization through which the affiliated crafts function as a
> unit, and find that it is a labor organization within the meaning of the Act. [citation
> omitted] . . . Additionally, I find that the Respondent Council . . . acted as agent for
> and on behalf of its affiliated local labor organizations. Accordingly, I find that the
> Respondent Building and Construction Trades Council of Delaware is a labor
> organization within the meaning of the Act.

IBEW Local 1 (E. Smith Plumbing Co.), 164 N.L.R.B 313 (1967); See also Bldg. & Constr. Trades

Council of Del. & Thomas E. Waters, 215 N.L.R.B. 624, 627, (1974); Bldg. & Constr.Trades

Council of Reading and Berks County (General Plumbing & Heating Company, Inc.), 155

N.L.R.B. 1184 (1965) (affiliates function as a unit and council is a labor organization.)

With respect to employee participation, it is sufficient that the employee members of the

constituent locals participate in the affairs of the council through their respective delegates. See

---

[6] See generally, Olin Industries, Winchester Repeating Arms. Co., 85 NLRB 396; Dun and Bradstreet, Inv., 80 NLRB
56; J. S. Abercrombie Co., 83 NLRB 524; Washoe Investment Co., Inc., d/b/a Crystal Bay Club and United Trades
Council of AFL-CIO Affiliated Unions, 169 N.L.R.B. 838 (1968)

Omaha Bldg. & Constr. Trades Council (Melvin Simon & Associates), 284 N.L.R.B. 328, 333 (1987); Plumbers Local 388 (Charles Featherly Construction Co.), 252 NLRB 452, 454 (1980). Federal courts also have found delegate participation to satisfy the employee participation requirement. See Sharp v. Omaha Bldg. & Constr. Trades Council, 821 F.2d 516, 517 (8th Cir. 1987); NLRB v. Metallic Bldg. Co., 204 F.2d 826, 827 (5th Cir. 1953).

With respect to the "dealing with employers" requirement, the Board has held that the handling of jurisdictional disputes, grievances, meetings with employers, and vigorous efforts to secure and protect jobs for the members of its affiliated locals to be sufficient to satisfy the "dealing with" part of the definition, even if the council did not engage in collective bargaining. Omaha Bldg. & Constr. Trades Council, 284 N.L.R.B. at 333 - 4. In the instant case, the BCTC engaged in collective bargaining with HYC itself. The Complaint alleges that the BCTC was a representative of organized labor in the negotiation of the ERY PLA.

The NLRB has specifically found this BCTC to be a labor organization within the meaning of the Act. See generally, Local 3, International Brotherhood of Electrical Workers, AFL-CIO; Building and Construction Trades Council of Greater New York, AFL-CIO (Di Gangi Electrical Services), 130 N.L.R.B. 1458 (1961); In the Matter of Stiefel Construction Corporation and United Steelworkers of America, C. I. O., 64 N.L.R.B. 565, 566 (1945). Most recently, in 2015 Region 2 of the NLRB found the BCTC to be a labor organization subject to the NLRA in an unrelated case that was settled. Pennington Declaration, ¶¶ 4, 5.

In the only case cited by Plaintiff, Business Asset Relocation, Inc. v. Teamsters Local 814, 14-CV-0098, 2015 U.S. Dist. LEXIS 39524, (EDNY 2015), the Eastern District of New York denied the BCTC's motion to dismiss a LMRA §303 action where the BCTC denied it was a "labor organization".

Consistent with the cited cases, it is clear that as a matter of law, the BCTC is a labor organization within the meaning of the NLRA/LMRA.[7] The Constitution makes it clear that Employees participate through democratically elected delegates and per capita tax is levied based on the size of an affiliate's membership. Pennington Dec. Exhibit "A", at p. 4. The affiliates participate in the executive board, the delegate body, and elect officers of the council. Id. at p.4. The BCTC's objectives are to improve working conditions, to organize workers, increase and protect work opportunities for the affiliated unions, promote labor harmony, promote collective bargaining, develop training, and protect the health and safety of workers. Each of these objectives, together with the participation of employees through the delegate body, satisfies the definition of labor organization as held by the cases cited above.

In addition, as the Complaint alleges, the BCTC engaged in negotiations with HYC for the ERY PLA with HYC. Complaint at ¶3. The Complaint alleges that the BCTC is an advocate for the use of PLAs and union labor. Id. at ¶24. The complaint alleges that HYC has filed grievances under the ERY PLA. Id. at ¶86. The BCTC is a member of the labor management committee, which is established to administer the ERY PLA and address project issues, including labor relations issues. Id. at Ex. "B", Art. 8, p. 22. The BCTC is involved in handling grievances and jurisdictional disputes. Id. at Art. 9 and 10. The PLA includes provisions for wages, benefits, hours of work, holidays, shifts, overtime, no strikes, grievance arbitration provisions, and more. Id. at

---

[7] The BCTC is also a labor organization as a matter of law under the Labor Management Reporting and Disclosure Act. The  United States Department of Labor – Office of Labor Management Standards ("OLMS") OLMS has determined that building and construction trades councils qualify as labor organizations under the LMRDA even when the building trades council does not engage in collective bargaining. The OLMS's Interpretative Manual expressly addresses the status of building and construction trades councils under the LMRDA: "A building and construction trades council, which is chartered by the Building and Construction Trades Department of the AFL-CIO and represents a number of locals in the building and construction industry in a particular area but does not itself engage in collective bargaining, is a labor organization subject to the requirements of the Act. See United States Department of Labor – Office of Labor Management Standards, OLMS Interpretive Manual at § 030.662 available at:
https://www.dol.gov/olms/regs/compliance/interp_manual/InterpretativeManual_010617.pdf

Art. 11 and 12. All of which were negotiated between HYC and the BCTC. The Complaint includes descriptions of the ways that HYC has "dealt with" the BCTC and LaBarbera on labor relations matters. Complaint at ¶s 3, 23, 25, 56, 60, 69, 86. Clearly, the BCTC has "dealt with" HYC on behalf of employees and its affiliated unions within the meaning of §2(5) of the NLRA. 29 USC § 152(5), which is sufficient to establish the BCTC as a labor organization. See Bldg. & Constr. Trades Council of Del. & Thomas E. Waters, 215 N.L.R.B. 624, 627, (1974); IBEW Local 1 (E.Smith Plumbing Co.), 164 N.L.R.B 313 (1967); Bldg. & Constr.Trades Council Of Reading And Berks County (General Plumbing & Heating Company, Inc.,155 N.L.R.B. 1184 (1965).

HYC has, in fact, admitted and acknowledged that the BCTC is a labor organization by negotiating a PLA with the BCTC. The PLA between the parties is a labor agreement within the meaning of §301 of the LMRA. Congress amended the NLRA and enacted §8(f) of the NLRA in 1959, which permits pre-hire agreements, such as PLAs, in the construction industry. See, 29 U.S.C. § 158(f). Additionally, the 1959 Amendments to §8(e) permit limits on subcontracting to signatory employers or those that agree to a master labor agreement for a project. 29 U.S.C. § 158(e). See Woelke & Romero Framing, Inc., 456 U.S. 645, 657 (1982); Connell Const. Co. v. Plumbers and Steamfitters, Local 100, 421 U.S. 616, 633 (1975).

PLAs are a form of pre-hire collective bargaining agreement that are lawful under both §§ 8(e) and (f) of the NLRA. As labor organizations, building and construction trades councils throughout the country have negotiated PLAs for construction projects. See Bldg. Indus. Elec. Contrs. Ass'n v. City of New York, 2011 U.S. Dist. LEXIS 86759 (S.D.N.Y. 2011)(upholding project labor agreements negotiated and agreed to by the City of New York and the BCTC), aff'd 678 F.3d 184 (2d Cir. 2012); Bldg. & Constr. Trades Council v. Associated Builders & Contrs.(Boston Harbor), 507 U.S. 218, 221 (1993) (upholding PLA between local building and

construction trades council and construction manager on behalf of Massachusetts Water Authority); see also; Johnson v. Rancho Santiago Cmty. College Dist., 623 F.3d 1011, 1016 (9th Cir. 2010); Phoenix Engineering, Inc. v. MK-Ferguson of Oak Ridge Co., 966 F.2d 1513, 1514 (6th Cir. 1992). When HYC negotiated the ERY PLA with the BCTC, it knew it was negotiating a labor agreement with, and on behalf of, labor organizations, and it should not be heard now to state otherwise in order to avoid removal.

### C. The Complaint Alleges Secondary Activity Preempted by §303.

The state court lawsuit is at its core an attack on conduct that, as alleged, recites the elements of "secondary boycott" activity. Complete preemption applies and federal jurisdiction exists when secondary conduct is alleged as the basis for a lawsuit.[8] The plain language of §8(b)(4) of the NLRA prohibits labor organizations and their agents from using threats, coercion, or restraint to interfere with the business relationships of employers engaged in commerce for the purpose of causing any person to cease doing business with any other person. 29 U.S.C. §158(b)(4).[9] Secondary conduct is aimed at third parties to ultimately pressure the primary employer.

In this case, HYC alleges that the Defendants engaged in conduct that threatened and coerced affiliated unions and their trade contractors so that they would not enter into "trade labor agreements" with HYC and/or work at 50 Hudson Yards. These conclusory allegations mirror the elements of a secondary boycott claim. The affiliated unions and trade contractors are the "secondaries" in Plaintiff's alleged scheme. Plaintiff quite simply gets it wrong when it argues that

---

[8] Complete preemption is entirely distinct from "defensive", "ordinary" or "Garmon" preemption, and the Defendants submit that, while the Plaintiff's claims are also preempted under "Garmon" preemption, Defendants do not rely on San Diego Building Trades v. Garmon, 359 U.S.236 (1959) for removal jurisdiction. See Smart v. Local 702, IBEW, 562 F.3d 798 (7th Cir. 2009).

[9] "The term "person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees.", or receivers in Bankruptcy. 29 U.S.C. §152(1).

threatening the unions and trade contractors is "primary" conduct.  See NLRB v. Retail Store Employees Union, 447 U.S. 607, 612 (1980); Allstate Interiors, Inc. v. United Bhd. Of Carpenters & Joiners of Am., 2010 U.S. Dist. LEXIS 94509 (S.D.N.Y. 2010) (citing Smart v. Local 702 IBEW, 562 F.3d at 808 (7th Cir. 2009)).

The alleged conduct is completely preempted and HYC's state law complaint is properly removed to this court.  See Monarch Long Beach v. Soft Drink Workers, Local 812, 762 F. 2d at 231 (2nd Cir. 1985)(the nature of a section 303 action is to recover injuries to one's business caused by a specific type of tortious conduct"); Iodice v. Calabrese, 512 F. 2d, at 390 (2nd Cir. 1975); Allstate, supra.

Defendants have met their burden of proving through competent evidence that the BCTC is a labor organization and that Plaintiff's state law claims for tortious interference with its prospective economic advantage with unions and trade contractors is in the nature of a LMRA §303 claim that is completely preempted and is removable to this Court pursuant to federal question jurisdiction.

## III. PLAINTIFF'S COMPLAINT IS PREEMPTED BY LMRA §301 AND IS PROPERLY REMOVED TO FEDERAL COURT

### A.  *Preemption under LMRA §301.*

Preemption under §301 converts state law claims into federal §301 claims and constitutes a basis for removal to federal court.  Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 66 (1987).  Section 301 of the LMRA, 29 U.S.C. 185(a), provides:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce. . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to citizenship of the parties.

Section 301 "not only provides federal court jurisdiction over controversies involving collective bargaining agreements, but also authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." Lingle v. Norge Div. of Magic Chef, Inc., 480 U.S. 399, 403 (1988); see also, Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455-56 (1957). Section 301 preempts both state law contract and tort claims if resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract. Allis-Chalmers Corp v. Luek, 471 U.S. 202, 220 (1985).

The "unusual preemptive power accorded Section 301" extends to create federal jurisdiction even when plaintiff's complaint does not refer to federal law. Vera v. Saks & Co., 335 F. 3d 109, 114 (2nd Cir 2003). Although the boundary between claims that require interpreting the labor agreement and claims that require merely consulting the collective bargaining agreement ("CBA") can be elusive, if the state-law claim requires interpretation of the agreement itself, the claim is preempted and subject to federal jurisdiction. Id. at 114; see also, Control Network Commun. Inc. v. IBEW, Local Union No 236, 145 F. Supp. 161 (N.D.N.Y. 2015) (fraud claim required more than a simple reference to the CBA and was preempted by § 301); Korthas v. Northeast Foods, Inc., 2006 U.S. Dist. LEXIS 18846 (N.D.N.Y. 2006) (causes of actions for defamation and tortious interference with contract were preempted by §301 because the claims depended upon the parties' respective obligations and duties under the CBA).

Section 301 governs claims founded directly on rights cited by collective bargaining agreements and claims substantially dependent on analyses of a collective bargaining agreement. Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987); Nelson v. Local 1181-1061, Amalgamated Transit Union, 652 Fed. Appx. 47 (2nd Cir. 2016). Preemption is designed to assure that determinations regarding "what the parties to a labor agreement agreed, and what legal

consequences were intended to flow from breaches of that agreement" do not serve to undermine the effort to develop and apply a uniform body of federal law. See Vera, 335 F.3d at 115; see also, Allis-Chalmers, 471 U.S. at 211.

The gravamen of Plaintiff's allegations are that Defendants are responsible for Plaintiff's alleged failure to realize cost savings anticipated from the ERY PLA and its inability to obtain the same or similar savings for Phase II. This claim is inextricably intertwined with consideration of the terms of the ERY PLA and is preempted. Allis-Chalmers, 471 U.S. at 216-217. Importantly, HYC relies on the difference between the savings it allegedly failed to realize under the ERY PLA and those it assumes it will achieve through trade labor agreements as the basis for the underlying action.

The very foundation of HYC's claims and the basis for its alleged damage is the allegation that HYC did not realize labor cost savings under the ERY PLA because of conduct attributed to Defendants. HYC recognized this when drafting its Complaint and that is why half the Complaint deals with the ERY PLA and alleged breach/repudiation. [10] Such a claim should have been resolved through arbitration and it was not. Preservation of the role of arbitration, and the "system of industrial self-government" in labor contracts is one of the central reasons that the Supreme Court has held state torts to be preempted claims. Id., at 220-221. "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness . . . and eviscerate a central tenet of federal labor-contract law under §301. . ." Id. Federal labor law favors the resolution of disputes arising from a labor contract to be resolved through the grievance and arbitration process. The ERY PLA includes a broad arbitration provision that provides any dispute between the parties regarding the interpretation or application of the PLA "shall be

---

[10] Ironically, HYC expected to achieve the same or similar savings by going outside the PLA and negotiating directly with the same unions that are signatory to the PLA, which HYC also accused of breaching or repudiating the PLA .

resolved pursuant to the exclusive procedure of the steps. . ." described in the provision. See Complaint, at Ex. "B.", Art. 9, p. 23.

The underlying state lawsuit is essentially an attempt to sidestep enforcement of the ERY PLA and to recast its claims against the Defendants as state law tort claims; seeking remedies that the federal labor law prohibits (i.e. punitive damages and liability against Defendant LaBarbera as President of the BCTC.) See, generally, Allis-Chalmers, 471 U.S. at 220-21 (ruling complaint should have been dismissed for failure to exhaust the grievance provisions or dismissed as preempted by Section 301.); see, also, Atchley v. Heritage Cable Vision Assoc., 101 F. 3d 495,501-02 (7th Cir. 1996)(affirming dismissal of state claim preempted by §301 for failure to grieve the claim).[11]

### B. *Plaintiff's Tortious Interference Claim Requires In-Depth Examination of the ERY PLA Because Plaintiff Alleged it Incurred Damage Which Unavoidably Leads Back to the PLA.*

As master of its own Complaint, Plaintiff puts the ERY PLA front and center and even attaches the ERY PLA as an Exhibit to the Complaint. HYC has alleged that it seeks to negotiate "trade labor agreements" on Phase II as a way to avoid the BCTC and to "secure economic incentives akin to incentives promised in the PLA". Complaint at ¶73. HYC alleges that Defendants' conduct has harmed HYC because "labor unions will not work at 50 Hudson Yards [Phase II] or will not provide any incentives for union work at 50 Hudson Yards [Phase II]." Id. at ¶92. HYC alleges that as a result it has been damaged in an amount not less than $50,000,000. Id. at ¶93.

---

[11] The cases cited by Plaintiff are both distinguishable from the instant case because the claims there were independent from the CBA. Foy v. Pratt & Whitney, 127 F. 3d 229 (2nd Cir. 1997)(false verbal promise not arising from the CBA) and Gay v. Carlson, 60 F. 3d 83 (2nd Cir. 1995)(action in tort against co-workers and issue of "qualified privilege" was independent from CBA).

In alleging Defendants' interference with those trade labor agreements, HYC ties its tortious interference claim to the allegation that it cannot achieve those "economic incentives akin to incentives promised in the PLA." HYC alleges it did not achieve those savings in the ERY PLA due to the alleged breach and repudiation of the ERY PLA by the BCTC but that it has a right to those economic incentives in individual trade labor agreements. HYC's claim requires an interpretation and analysis of the ERY PLA for the purposes of understanding what "economic incentives" HYC might reasonably have expected to receive from the ERY PLA and negotiate in trade labor agreements. The interpretation and analysis of the ERY PLA is critical to HYC's claims, HYC knows it, and that is why it has extensively treated the PLA in the Complaint.

Mere reference to economic benefits in a CBA for the purpose of calculating damages may be insufficient for preemption under §301. See Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 413 fn. 12 (1988). However, here, reference to the ERY PLA is required to determine *if* Plaintiff is damaged because HYC ties its tort damage claim to the alleged breach of the PLA, not to simply calculate damages. See Burton v. GMC, 95-civ-1054, 2008 U.S. Dist. LEXIS 62758, *47-48 (August 15, 2008) (stating that when determining whether Defendant's actions caused damages alleged under state law requires interpretation of a CBA, then the state law cause of action is preempted by §301). Essentially, HYC asks this Court to presume not only that HYC failed to receive the benefit of its bargain under the ERY PLA, but also that it should secure the same benefit through negotiating trade labor agreements directly with local unions. The difference between what HYC alleges it failed to secure in the PLA and presumes to secure in trade labor agreements at Phase II is the crux of HYC's damage claim. This cannot be resolved without a detailed analysis and interpretation of the underlying PLA and the alleged breaches and is a right it ostensibly claims

derives from the PLA. In sum, HYC's claim for tortious interference with prospective economic advantage cannot be resolved without an analysis of the ERY PLA.

While Plaintiff now seeks to disavow or minimize the relevance of its allegations regarding the PLA, the Court must evaluate the Defendants' right to remove this case based on the importance Plaintiff itself placed upon the ERY PLA and the Defendants' alleged breach of the same in its Complaint. See, Vera v. Saks & Co., 335 F.3d at 116. Plaintiff's "artful pleading" to defeat removal by purposefully avoiding a breach of contract claim, despite its extensive treatment of the PLA and alleged breach and repudiation, is precisely what the artful pleading doctrine is intended to prevent. "Faced with such an artfully (i.e. misleadingly) pleaded complaint, the federal court may construe the compliant as if it raised the federal claim that actually underlies the plaintiff's suit." See Sullivan v. Am. Airlines, Inc., 424 F. 3d 267 (2nd Cir. 2005).

C. *Whether the BCTC is a Labor Organization, Whether the PLA is a Labor Agreement, and Whether Alleged Defamatory Statements are True or False all Require Interpretation and Application of the PLA.*

The position of the Plaintiff that the BCTC is not a labor organization and that the ERY PLA is not a labor agreement within the meaning of the LMRA are federal questions to be resolved by interpretation and application of the PLA. Furthermore, the question of whether the state law claims are independent of the labor agreement is itself a question of federal law. Allis- Chalmers, 471 U.S. at 213-14.

Additionally, Plaintiff's defamation claim is also inextricably intertwined in the PLA by HYC in its Complaint. Whether Defendant LaBarbera's allegedly defamatory statements are true or false depends on an interpretation of the PLA and the parties' respective obligations under the PLA. This includes analysis of the obligation to pay wages and employee benefits, the negotiations leading to those obligations, as well as the fulfillment of those obligations. HYC alleges it is not a

union buster because it has a PLA and employed 4000 union workers; paid billions in wages and benefits under that PLA. Plaintiff essentially argues, they complied with their PLA obligations and Defendant LaBarbera's statements are, therefore, false. This again ties the claim to the parties' obligations under the PLA resulting in preemption under §301. See Panczykowski v. Laborers' Int'l, 2001 U.S. App. Lexis 1282 (2nd Cir. 2001)(affirming dismissal of defamation claim as preempted by Section 301 since resolution of the plaintiff's claims required more than mere consultation with the union constitution, which is a labor contract subject to §301.

## CONCLUSION

For all the foregoing reasons, Plaintiff's, Hudson Yards Construction LLC, Motion for Remand must be denied and the Court must issue an Order for the underlying matter to proceed in federal court pursuant to federal question jurisdiction and for such other relief as this Court deems just and proper.

Dated:  Woodbury, New York
       May 21, 2018

                      Respectfully Submitted,

By:   /s/ Carol O'Rourke Pennington
      CAROL O'ROURKE PENNINGTON (0594)
      COLLERAN, O'HARA & MILLS L.L.P.
      Attorneys for Defendants
      100 Crossways Park Drive West, Suite 200
      Woodbury, New York 11797
      (516) 248-5757
      cop@cohmlaw.com