UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUDSON YARDS CONSTRUCTION LLC,<br><br>               Plaintiff,<br><br>-against-<br><br>BUILDING AND CONSTRUCTION TRADES COUNCIL OF GREATER NEW YORK AND VICINITY and GARY LaBARBERA,<br><br>               Defendants. | Case No.: 18 CIV 02376 GHW)(DCF)<br>ECF Case |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Respectfully submitted,

**WACHTEL MISSRY LLP**
1 Dag Hammarskjold Plaza
885 Second Avenue, 47th Fl.
New York, New York 10017
(212) 909-9500

**COVINGTON & BURLING LLP**
620 8th Avenue
New York, New York 10018
(212) 841-1000

*Attorneys for Plaintiff*

## Table of Contents

Table of Authorities ................................................................................................................(ii)

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.................................................................................................................................2

I.  DEFENDANTS DO NOT DISPUTE THAT THEY BEAR THE BURDEN OF PROOF AND THAT THE COMPLAINT'S FACTUAL ALLEGATIONS MUST BE ACCEPTED AS TRUE ..............................................................................................2

II. BCTC IS NOT A "LABOR ORGANIZATION"................................................................2

III. EVEN IF THE BCTC IS A LABOR ORGANIZATION, THE COURT LACKS FEDERAL QUESTION JURISDICTION UNDER LMRA § 303 .....................................5

IV. SECTION 301 PREEMPTION DOES NOT APPLY BECAUSE PLAINTIFF'S TORT CLAIMS DO NOT REQUIRE INTERPRETATION OF THE PLA ......................8

CONCLUSION............................................................................................................................10

## Table of Authorities

**Cases**                                                                                            **Page No.**

*Allis-Chalmers Corp. v. Lueck,*
  471 U.S. 202 (1985) ........................................................................................................... 8

*Allstate Interiors, Inc. v. United Bhd. of Carpenters and Joiners of Am.,*
  No. 10 Civ. 2861, 2010 WL 3894915 (S.D.N.Y. Sep. 10, 2010) ................................................ 7

*Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp.,*
  814 F.2d 102 (2d Cir. 1987) ........................................................................................................ 9

*Bowen v. Georgetown Univ. Hospital,*
  488 U.S. 204 (1988) ..................................................................................................................... 5

*Bus. Asset Relocation, Inc. v. Teamsters Local 814*, No. 14-CV-0098 (RRM) (VMS),
  2015 WL 1443267 (E.D.N.Y. Mar. 27, 2015) ......................................................................... 4, 5

*Di Giorgio Fruit Corp.,*
  87 N.L.R.B. 720 (1949) ............................................................................................................... 3

*Electrical Workers Local Union No. 73,*
  134 N.L.R.B. 498 (1961) ............................................................................................................. 6

*Filus v. Lot Polish Airlines,*
  907 F.2d 1328 (2d Cir. 1990) ...................................................................................................... 4

*Houston Insulation Contractors Ass'n v. NLRB,*
  386 U.S. 664 (1967) ..................................................................................................................... 6

*IBEW Local 1 (E. Smith Plumbing Co.),*
  164 N.L.R.B. 313 (1967) ............................................................................................................. 5

*Int'l Ass'n of Machinists and Aerospace Workers Local Lodge No. 967 by McCadden v. General Electric Co.,*
  713 F. Supp. 547 (N.D.N.Y. 1989) ............................................................................................. 9

*Iodice v. Calabrese,*
  512 F.2d 383 (2d Cir. 1975) ........................................................................................................ 7

**Cases**                                                                                                    **Page No.**

*Lechmere, Inc. v. NLRB*,
    502 U.S. 527 (1992) .................................................................................................... 3

*Linn v. United Plant Guard Workers*,
    383 U.S. 53 (1966) .................................................................................................... 10

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994) .................................................................................................... 8

*Magnavox Co. (Elec. Workers, UE, Local 910)*,
    111 N.L.R.B. 379 (1955) ............................................................................................. 4

*Mills 2011 LLC v. Synovus Bank*,
    921 F. Supp. 2d 219 (S.D.N.Y. 2013) ........................................................................ 4

*Monarch Long Beach Corp. v. Soft Drink Workers, Local 812*,
    762 F.2d 228 (2d Cir. 1985) ....................................................................................... 7

*NLRB v. Local 294, Int'l Bro. of Teamsters, Chauffers, Warehousemen & Helpers of Am.*,
    284 F.2d 887 (2d Cir. 1960) ....................................................................................... 7

*NLRB v. Retail Store Emps. Union*,
    447 U.S. 607 (1980) .................................................................................................... 7

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) ....................................................................................... 8

**Statutes**                                                                                                **Page No.**

LMRA § 301 ............................................................................................................... 1, 2, 5, 8

LMRA § 303 ................................................................................................................... 1, 5, 6

## PRELIMINARY STATEMENT

Plaintiff Hudson Yards Construction LLC ("Plaintiff" or "HYC") respectfully submits this Reply in further support of its motion to remand this action to New York state court.

Defendants' Opposition concedes many of the key points compelling remand:

- Defendants admit that it is their burden to establish federal jurisdiction over Plaintiff's state-law tort claims. *See* Plaintiff's Motion to Remand ("Pl.'s Mot.") at 6-7; Hearing Tr. 3/30[1] at 8:21-24, 10:5-7; Defendants' Opposition ("Defs.' Opp.") at 8.
- Defendants admit no diversity jurisdiction exists. *See* Pl.'s Mot. at 2, 7-9; Defs.' Opp. at 3 n.1.
- Defendants do not dispute that there is no federal question jurisdiction as to the claims against LaBarbera. *See* Pl.'s Mot. at 14-15.

Defendants are left only with the argument that Plaintiff's claims are preempted by the Labor Management Relations Act ("LMRA"), but this argument likewise fails. Preemption under Sections 301 and 303 of the LMRA does not apply here because BCTC is not a "labor organization." Defendants cannot show that "employees" participate in BCTC, as required by the statutory definition. Counsel for Defendants conceded this dispositive fact at the pre-motion conference. Despite representing to this Court that Defendants would rely solely on the current record in opposing the remand motion (Tr. at 8:3-4, 9:2-10:4), Defendants now rely on new evidence—BCTC's Constitution and By-laws—in attempting to contradict their own concession regarding employee participation. However, the Constitution and By-laws do not demonstrate that the BCTC is a "labor organization." But if the Court were inclined to rely on BCTC's extrinsic evidence, then it should grant Plaintiff expedited jurisdictional discovery and a hearing so the Court may consider this issue with the benefit of a fully-developed factual record.

Even if BCTC were a "labor organization," federal jurisdiction is still absent (i) under LMRA § 303, because the tortious conduct alleged in the Complaint is "primary" activity, not

---

[1] The transcript from the court conference held on March 30, 2018 is cited herein as "Tr."

"secondary" activity under the NLRA; and (ii) under LMRA § 301, because the Court need not interpret the PLA to adjudicate Plaintiff's state-law tort causes of action. For these reasons, the Court should grant Plaintiff's motion to remand.

## ARGUMENT

### I. DEFENDANTS DO NOT DISPUTE THAT THEY BEAR THE BURDEN OF PROOF AND THAT THE COMPLAINT'S FACTUAL ALLEGATIONS MUST BE ACCEPTED AS TRUE.

Defendants do not contest that they bear the burden of proof on this motion and that the Complaint's factual allegations must be accepted as true. *See* Pl.'s Br. at 6-7; Defs.' Opp. at 8. Instead, Defendants argue that the Complaint's "legal conclusions" need not be accepted as true. But Plaintiff's motion does not rely on any "legal conclusions." The allegations cited in Plaintiff's motion are factual, *e.g.*, that BCTC is not a labor union or a signatory to a collective bargaining agreement; that BCTC is an "umbrella organization"; that its primary purpose is political—to advocate for unions; that it cannot negotiate wages or work conditions, or otherwise bind any union without a specific agreement by said union. *See* Pl. Br. at 10 (Compl. at ¶¶ 13, 24). These factual allegations must be accepted as true on this motion. And those unrebutted facts compel the legal conclusion that BCTC is not a "labor organization" under the LMRA.

### II. BCTC IS NOT A "LABOR ORGANIZATION."

Defendants do not dispute that BCTC must satisfy two requirements to qualify as a "labor organization": (1) BCTC must be an organization "in which employees participate"; and (2) BCTC must "exist[] for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." Pl.'s Br. at 9. Defendants' brief fails to show that BCTC meets either of these requirements.

As to employee participation, BCTC points to no evidence that can overcome Defendants' prior concessions that employees do *not* participate in the BCTC. Defendants do

not dispute that they conceded this critical fact on two prior occasions: (1) at the pre-motion conference in this case, *see* Tr. at 8:3-4; and (2) in the *Business Asset Relocation* case, *see* Pl.'s Mot. at 10. Defendants point to no changed circumstances or facts to explain their change in position. Instead, Defendants attempt to minimize their prior assertion as a mere effort "***to avoid liability***" under the LMRA. Defs.' Opp. at 12 n.6 (emphasis added). But Defendants presumably want to "avoid liability" in this case too. BCTC got it right the first time. In the absence of any evidence that the relevant facts have changed, Defendants' unsupported assertions that employees participate in BCTC do not meet their burden of proof on this motion.

The only evidence that Defendants now cite on the question of employee participation is BCTC's Constitution and By-laws. *See* Defs.' Opp. at 3, 13-14. As an initial matter, Defendants' reliance on material outside of the Complaint violates Defendants' counsel's representation at the pre-motion conference. Tr. at 8:24-10:4. In any event, the Constitution and By-laws do not demonstrate that employees participate in BCTC. The document simply provides that affiliated unions select delegates to BCTC. [O'Rourke Decl., Ex. A at 3-5]. It does not satisfy Defendants' burden to prove that those delegates are "employees" under the NLRA, as opposed to elected or appointed union officials. Indeed, at the pre-motion conference, Defendants' counsel explained that "delegates" participate in BCTC, but in the very next breath conceded that "employees" do not. Tr. at 7:21-8:4. Defendants have identified no evidence that any BCTC delegate is employed by Plaintiff or is even considered to be an "employee" under the NLRA. The NLRA "confers rights only on *employees*, not on unions or their nonemployee organizers." *See Lechmere, Inc. v. NLRB*, 502 U.S. 527, 532 (1992); *see also Di Giorgio Fruit Corp.*, 87 N.L.R.B. 720 (1949) (finding that entity comprised of non-"employees" under the NLRA is not a "labor organization"). BCTC's own website reflects that its Executive Board is

comprised of officers of its affiliated local unions, not NLRA "employees." *See* http://www.nycbuildingtrades.org/html/execbd.html.[2] Defendants have therefore failed to meet their burden as to the first element of what constitutes a "labor organization."

At the very least, if the Court were inclined to credit Defendants' argument, Plaintiff is entitled to discovery and a hearing on the issue of employee participation in BCTC, given that Defendants have relied on materials outside of the pleadings. *See, e.g., Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990) (ordering limited discovery with respect to subject matter jurisdiction); *see also Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219 (S.D.N.Y. 2013) ("The Court has authority to order jurisdictional discovery to allow [defendant] the opportunity to demonstrate subject matter jurisdiction.").

BCTC has also failed to meet its burden as to the second element of the "labor organization" test. Trade councils that "devote themselves almost exclusively to the educational and legislative programs" are not labor organizations. *See Magnavox Co. (Elec. Workers, UE, Local 910)*, 111 N.L.R.B. 379, 381 (1955). The Complaint alleges that "BCTC is for all intents and purposes a political organization advocating for its affiliate unions." Compl. at ¶ 24. This fact, which must be accepted as true on this motion, is consistent with BCTC's own characterization. For instance, when arguing in the *Business Asset Relocation* case that it was not a "labor organization," BCTC asserted that it "does not represent employees of any employer"; instead, it "is an umbrella organization comprised of local building and construction trades unions, engaged primarily in legislative, political and community activity in advocacy for its affiliate organizations." *See Bus. Asset Relocation, Inc. v. Teamsters Local 814*, No. 14-CV-

---

[2] Defendants cite cases for the proposition that it is sufficient if "employee members of the constituent locals participate in the affairs of the council." Defs. Opp. at 13-14. But this presupposes that the delegates are, in fact, employees under the NLRA. Defendants have not shown that here and the cited cases do not expressly address that issue.

0098 (RRM) (VMS), 2015 WL 1443267, at *5 n. 6 (E.D.N.Y. Mar. 27, 2015) (ECF No. 32 at 16).

The only evidence cited by Defendants to rebut the Complaint's allegations and BCTC's own prior assertions is the fact that Plaintiff negotiated the PLA with BCTC. *See* Defs.' Opp. at 16. Contrary to Defendants' argument, this is not an acknowledgement by Plaintiff of BCTC's status as a "labor organization." To be sure, BCTC lacks the authority to bind individual unions and thus *cannot* negotiate with employers on behalf of employees. Local unions therefore needed to sign the PLA. *See* Compl. Ex. A. at 42-66; Compl. ¶ 24. Various individual addenda specific to local unions were also included in the PLA. *See, e.g.,* Compl. Ex. A at 50, 52.

Given BCTC's failure to meet its burden as to whether it is a "labor organization," the Court lacks federal question jurisdiction under both LMRA §§ 301 and 303.[3]

### III. EVEN IF THE BCTC IS A LABOR ORGANIZATION, THE COURT LACKS FEDERAL QUESTION JURISDICTION UNDER LMRA § 303.

Even assuming that BCTC is a "labor organization" by virtue of the alleged participation of delegates of its affiliated unions, the alleged misconduct in the complaint is not "secondary"

---

[3] BCTC also asserts that "[t]he NLRB has specifically found this BCTC to be a "labor organization" within the meaning of the Act." Defs.' Opp. at 14. While it is true that that the NLRB found BCTC to be a "labor organization" under the NLRA in cases decided more than 60 years ago—a point which Plaintiff noted in its moving papers (Pl.'s Mot. at 12, n.5)—the status of BCTC as a "labor organization" was not disputed in those cases. Defendants conveniently ignore this fact. Moreover, a previous finding that a trade council is a labor organization is not dispositive. *IBEW Local 1 (E. Smith Plumbing Co.)*, 164 N.L.R.B. 313, 313 n.4 (1967) (finding the Trades Council is a labor organization, despite "an earlier decision . . . . in which [the NLRB] found that this same Trades Council was not then a labor organization within the meaning of the Act."). BCTC does not contend that its organizational character is unchanged; to the contrary, it has admitted to significant changes, a representation that further diminishes any persuasive authority attached to the NLRB decisions cited by Defendants. *See* Tr. at 7:16-17 ("[W]hat [BCTC] does and how it functions has changed significantly [since 1961]."). Despite having the opportunity to explain -- and the burden to prove -- what those significant changes are and why these cases are purportedly still relevant today, Defendants failed to provide any explanation or evidence on that issue. Defendants also misleadingly rely on mere allegations in a 2015 NLRB complaint against BCTC that alleged that BCTC was a "labor organization"; the case ultimately settled and adds no precedential value. Indeed, courts owe no deference to an agency's mere "litigating position." *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 212-13 (1988).

and thus preemption does not apply under LMRA Section 303.

The gravamen of the complaint is that BCTC is organizing and enforcing a boycott of HYC as to the Western Railyards site. Specifically, HYC has a dispute with BCTC and its union affiliates (currently being arbitrated) concerning the PLA at the Eastern Railyards portion of the Hudson Yards project. BCTC is now pressuring its affiliated unions not to enter Trade Labor Agreements ("TLAs") with HYC for work at the Western Railyards site, and BCTC is defaming HYC regarding its labor practices. The BCTC's misconduct—together with its affiliated unions—is clearly directed against HYC, rendering it a primary, not secondary, dispute. *See Electrical Workers Local Union No. 73*, 134 N.L.R.B. 498 (1961) (finding that umbrella organization and its affiliated union did not violate § 8(b)(4) of the NLRA where the local union instructed the council to place the employer on an "unfair list"); *see also Houston Insulation Contractors Ass'n v. N.L.R.B.*, 386 U.S. 664, 669 (1967) (finding a boycott by a union of an employer is primary activity where a collective bargaining agreement existed between the union and an association in which the employer is a member).

Defendants confusingly argue that BCTC's affiliated unions are "'secondaries[] in Plaintiff's alleged scheme." *See* Defs.' Opp. at 17. It is telling that Defendants fail to cite any authority supporting this novel theory. Defendants' argument improperly seeks to separate BCTC (a conceded primary) and its affiliated unions (the purported secondaries) for purposes of the primary/secondary analysis. This makes no sense, particularly since, under *Defendants'* theory, the alleged participation of the local unions' delegate members of the BCTC is purportedly what makes BCTC a "labor organization" in the first place. If a union organizes a strike or another type of activity against an employer, the individual employee members of that union are not separate "secondaries" under the LMRA; rather, they are part of the primary

dispute. *See N.L.R.B. v. Local 294, Int'l Bro. of Teamsters, Chauffers, Warehousemen & Helpers of Am.*, 284 F.2d 887, 889-93 (2d Cir. 1960) (finding that § 8(b)(4)(A) only prohibits unions from inducing employees of a *secondary* employer to engage in a strike, as opposed to the employees of the primary employer). But that is essentially what Defendants are arguing here.

Defendants cite two cases purporting to show that BCTC's conduct is secondary activity. *See* Defs.' Opp. at 18. Both are inapposite; they involve protests against a third party designed to force secondary companies to choose "between their survival and the severance of their ties with [the primary employer]." *NLRB v. Retail Store Emps. Union*, 447 U.S. 607, 615 (1980); *see also Allstate Interiors, Inc. v. United Bhd. of Carpenters and Joiners of Am.*, No. 10 Civ. 2861, 2010 WL 3894915, at *1 (S.D.N.Y. Sep. 10, 2010). In *Allstate Interiors,* the district court held that removal was proper where the employer alleged that the union defendants threatened, coerced and restrained general contractors, prospective developers and project sponsors against hiring the plaintiff employer for construction jobs. *Id.* Those actions, the district court correctly found, were illegal secondary activity under NLRA § 8(b)(4). *Id.* As Plaintiff noted in its opening brief (Pl.'s Mot. at 18), it may well be secondary for BCTC to threaten general contractors or other trade contractors to cease doing business with Plaintiff. But that is not Plaintiff's tortious interference cause of action here. Rather, at issue here is conduct by BCTC against Plaintiff, the *primary* employer.[4]

---

[4] The other decisions Defendants cite miss the mark, as they involve activities directed toward public customers and general contractors—which is not what is alleged in the instant complaint as the basis for Plaintiff's state law causes of action. *See Monarch Long Beach Corp. v. Soft Drink Workers, Local 812*, 762 F.2d 228 (2d Cir. 1985) (finding jurisdiction under LMRA § 303 for conduct by a local union which sought to urge public customers to boycott plaintiff); *Iodice v. Calabrese*, 512 F.2d 383, 385 n.1 (2d Cir. 1975) (finding secondary activity involving a local union's activity directed toward contractors).

**IV. SECTION 301 PREEMPTION DOES NOT APPLY BECAUSE PLAINTIFF'S TORT CLAIMS DO NOT REQUIRE INTERPRETATION OF THE PLA.**

Even if BCTC is a "labor organization," LMRA Section 301 does not preempt Plaintiff's claims because those claims are not "substantially dependent upon analysis of the terms of [a collective bargaining] agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also* Pl.'s Mot. at 15.

Courts draw a sharp distinction between tort claims requiring interpretation of a collective bargaining agreement (preempted) and ones for which a court may merely need to consult such an agreement (not preempted). *See Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003); *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Defendants disregard the nuance and "elusive[ness]" of this boundary. Defs.' Opp. at 19. The purpose of the LMRA § 301 preemption doctrine is to avoid the risk of inconsistency in interpretations of the relevant collective bargaining agreement from differing state-court opinions. *See Vera*, 335 F.3d at 114. No such risk is present here, as Plaintiff's causes of action are not "dependent"—let alone, "substantially dependent"—on any conceivable interpretation of the PLA.

Defendants contend that the Complaint is an effort to "sidestep" the arbitration requirement of the PLA and to "recast" complaints about the Eastern Railyards PLA in this lawsuit. This is simply untrue. As the Complaint expressly states, the PLA is discussed therein for background purposes only, and HYC is already pursuing BCTC's contractual violations in the PLA's grievance-arbitration machinery. *See* Pl.'s Mot. at 15; Compl. ¶ 86 ("The violations of the PLA must be—and will be—and in some instances are being—pursued by HYC through arbitration.... Those violations are alleged herein as background, and to explain HYC's decision not to seek a PLA for the remaining portions of Hudson Yards, and BCTC's consequent campaign of retaliation and tortious conduct against HYC.").

Defendants also argue that HYC's theory of damages requires an "in-depth examination" of the PLA. *See* Defs.' Opp. at 19-23. Specifically, Defendants contend that HYC's damages theory is that, in connection with the unconsummated TLAs, HYC is entitled to the benefit of the same economic benefits set forth in the PLA. *See id.* This argument is meritless.

First, the Complaint does not set forth the damages theory that Defendants imagine. Defendants rely entirely on Paragraph 73. But this paragraph does not purport to identify HYC's damages theory; rather, it makes a *factual allegation* about what HYC sought to achieve in pursuing the TLAs:

> HYC is bidding project work and negotiating directly with individual trade contractors and their respective unions and trade councils. HYC is doing so in an attempt to secure economic incentives akin to incentives promised in the PLA, but this time through separate Trade Labor Agreements…

Damages might be calculated in a number of ways having nothing to do with the PLA, including, for instance, damages resulting from the delays and interference with the construction caused by Defendants, which would have nothing to do with interpreting the PLA.

Second, even if this were HYC's damages theory, it would not be "substantially dependent" on the PLA. Significantly, Defendants concede that "[m]ere reference to economic benefits in a CBA for the purpose of calculating damages may be insufficient for preemption under Section 301." Defs.' Opp. at 22. Indeed, Defendants fail to identify a *single* PLA provision that would need to be interpreted. At most, under this damages theory, the PLA may need to be consulted as a reference point, but no provision must be analyzed or interpreted.[5]

---

[5] *See Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp.*, 814 F.2d 102, 106 (2d Cir. 1987) (a CBA may contain information such as "rate of pay and other economic benefits" that might be helpful in determining damages to which a worker prevailing in a state-law suit is entitled, but that does not result in preemption of the state-law claim); *see also Int'l Ass'n of Machinists and Aerospace Workers Local Lodge No. 967 by McCadden v. General Electric Co.*, 713 F. Supp. 547, 554-55 (N.D.N.Y. 1989) (finding that when some elements of a state-law claim require interpretation of the CBA, including to determine past and present terms and conditions

Next, Defendants assert that whether BCTC is a "labor organization" requires interpretation of the PLA. Defs.' Opp. at 23. Defendants provide no explanation or legal authority supporting this conclusion. While Defendants have relied on the existence and negotiation of the PLA to argue that BCTC is a "labor organization," neither side's position on this issue requires any *interpretation* of any PLA provision.

Finally, as to the defamation cause of action, Defendants fail to dispute that Plaintiff has pleaded actual malice and damages, and thus it is not preempted under *Linn v. United Plant Guard Workers*, 383 U.S. 53, 63 (1966). Instead, Defendants argue that the defamation claim is "inextricably intertwined" with the PLA. Defs.' Opp. at 23. But evaluating the truth or falsity of Defendants' accusations that Plaintiff is a "union buster[]"; that the work site is a "prison"; and that Plaintiff thinks "we're not good enough to build Hudson Yards" (Compl. at ¶¶ 96-100) requires no interpretation of the PLA. Defendants incorrectly argue that HYC's position is "essentially" that it complied with its PLA obligations. To the contrary, the defamation is not a statement by Defendants that HYC breached the PLA; rather, the alleged defamation consists of highly-inflammatory factual assertions separate from the PLA, such as the Hudson Yards work site is a "prison." No interpretation of the PLA is needed to determine whether that statement (and the other cited defamatory statements) is false.

## CONCLUSION

For the foregoing reasons, the Court lacks subject-matter jurisdiction over Plaintiff's tort causes of action, which should be remanded to New York State Supreme Court.

---

of employment and to calculate damages, and other evaluations of the claim rest on state law, the separate state-law analysis is not preempted; the entirety of the cause of action is not completely preempted).

Dated:       June 4, 2018
             New York, New York

                                        Respectfully submitted,

                                        **WACHTEL MISSRY, LLP**

                                        By: _____
                                            William B. Wachtel
                                            Evan Weintraub
                                            Marc Litt

                                        One Dag Hammarskjold Plaza
                                        885 Second Avenue, 47th Floor
                                        New York, New York 10017
                                        (212) 909-9500

                                        COVINGTON & BURLING LLP
                                        Alan Vinegrad
                                        C. William Phillips
                                        Philip A. Irwin

                                        620 8th Avenue
                                        New York, New York
                                        (212) 841-1000

                                        *Attorneys for Plaintiff*