USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/15/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
HUDSON YARDS CONSTRUCTION LLC,

                    Plaintiff,

      -against-                                1:18-cv-2376-GHW

                                                   MEMORANDUM OPINION
BUILDING AND CONSTRUCTION                AND ORDER
TRADES COUNCIL OF GREATER NEW
YORK AND VICINITY AND GARY
LaBARBERA

                    Defendants.
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Defendants removed this case from New York Supreme Court, County of New York, asserting that § 301 and § 303 of the Labor Management Relations act of 1947 ("LMRA) preempt Plaintiff's state-law claims. Plaintiff moved to remand the case, arguing that neither section § 301 or § 303 is implicated by its complaint. On a motion to remand, Defendants bear the burden of proving that removal was proper; they have failed to meet that burden. Accordingly, Plaintiff's motion is GRANTED and this case is remanded to New York Supreme Court.

## I. BACKGROUND

### A. Factual Background

      Plaintiff is the construction manager of the Hudson Yards Development Project (the "HYD"). Compl. (ECF. No. 3-2) ¶ 1. The Building and Construction Trades Council of Greater New York (the "BCTC") is an "umbrella organization comprised of representatives of approximately 15" affiliated-member unions which participate in the BCTC though elected delegates. Pl.'s Mot. (ECF No. 27) at 4 (citing Compl. ¶ 24); BCTC's Constitution and Bylaws

("BCTC's Bylaws") (ECF No. 28-1) art. III §§ 1, 5. Mr. LaBarbera is the President of the BCTC. Compl. ¶ 14.

On January 16, 2013, Plaintiff "executed a site-wide project labor agreement ('PLA') with the BCTC and certain of its affiliated-member unions "permitting those unions to be hired for HYD's Eastern Railyards construction ('ERY')." Pl.'s Mot. at 1; *see* Compl. ¶ 3. "The PLA only covers the building and construction trades and crafts work within the ERY at the HYD." Compl. ¶ 26. "It does not cover 50 Hudson Yards, 55 Hudson Yards, the [Western Railyards construction], or any other portions of the HYD." *Id.* Over time, the relationship between Plaintiff and Defendants broke down due to conduct which Plaintiff alleges violated the PLA. *Id.* ¶¶ 29-71. Those alleged breaches are the subject of current and forthcoming arbitration pursued by Plaintiff under article 9 of the PLA. *Id.* ¶ 86.

Due to the strained relationship between Plaintiff and Defendants, Plaintiff decided not to negotiate another PLA with the BCTC, and instead Plaintiff "is bidding the project work and negotiating directly with individual trade contractors and their respective unions and trade councils" for the labor needed for the non-ERY portions of the HYD. *Id.* ¶ 73. Plaintiff alleges that Defendants, in retaliation for Plaintiff's decision not to negotiate another PLA, have engaged in activities designed to "force [Plaintiff] into signing a new PLA" with the BCTC. *Id.* ¶ 79. Plaintiff further alleges that those retaliatory acts include pressuring the BCTC's affiliated-member unions to decline or terminate negotiations with Plaintiff regarding agreements as to non-ERY portions of the HYD. *Id.* ¶¶ 80-83. Additionally, Plaintiff claims that Defendants made malicious, false, and damaging statements regarding Plaintiff. *Id.* ¶¶ 94-104.

**B. Procedural History**

On or about March 8, 2018, Plaintiff brought suit against Defendants alleging tortious interference with prospective economic advantage and defamation in New York State Supreme

Court, County of New York. Pet. for Removal (ECF. No. 3-1) at 1; Compl. at 1, 23-24. On March 16, 2018. Defendants removed this case from New York Supreme Court, invoking both federal question and diversity jurisdiction. Pet. for Removal ¶ 11. On April 30, 2018, Plaintiff moved to remand. Pl.'s Mot. In their May 21, 2018 opposition to that motion, Defendants conceded that in this case "diversity does not provide a basis for removal." Defs.' Opp. (ECF No. 27) at 3 n.1. Plaintiff replied on June 4, 2018. Pl.'s Reply (ECF No. 30).

## II. DISCUSSION

### A. Standard

Under 28 U.S.C. § 1441(a), defendants may remove to federal court an action originally filed in state court if it could have been brought in federal court:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Defendants assert federal question jurisdiction as the basis for removal. 18 U.S.C. § 1331. As they are the party asserting federal question jurisdiction, Defendants bear the burden of "establishing to a reasonable probability" that removal was proper. *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009) (citing *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006)). "Unless that burden is met, the case must be remanded back to state court. At this stage therefore, the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) (quoting *Bellido–Sullivan v. American International Group, Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000)). "Any doubts regarding the propriety of removal are resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" *Anwar* 676 F. Supp. 2d at 292 (quoting *Lupo*

3

*v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). "When the removal of an action to federal court is challenged, the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." *Rosario v. Target Corp.*, 15-cv-3724-KBF, 2015 WL 4597428, at *2 (S.D.N.Y. July 30, 2015) (quotation marks omitted).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A case may not be removed to federal court on the basis of a defense of federal preemption, even if the defense is anticipated in the complaint, and even if the preemption is the only issue in the case." *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232 (2d Cir. 1997) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

"Occasionally, however, 'the pre-emptive force of a statute is so extraordinary' that any claim based on preempted state law is considered a federal claim arising under federal law." *Id.* (quoting *Caterpillar*, 482 U.S. at 393). "This 'complete pre-emption corollary to the well-pleaded complaint rule' applies to claims under § 301 of the LMRA." *Id.* (quoting *Caterpillar*, 482 U.S. at 393). Accordingly, if the state claims pleaded by a plaintiff are preempted by § 301 of the LMRA, "the action may properly be removed to the federal courts, even when the plaintiff's complaint does not itself include a federal cause of action." *Shafii v. British Airways, PLC*, 83 F.3d 566, 569 (2d Cir. 1996) (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258-64 (1994)).

### B. Removal Was Improper Because Plaintiff's Claims Are not Preempted

The Complaint alleges only state-law claims—tortious interference with prospective economic advantage and defamation. As neither claim implicates federal law on the face of the well-pleaded complaint, and the only potential basis for removal is federal question jurisdiction, Defendant must establish a reasonable probability that Plaintiff's claims are completely preempted

4

by federal law in order to avoid remand. Defendants contend that § 301 and § 303 do just that. For the reasons that follow, Defendants have not carried their burden.

### 1. LMRA § 301 Does Not Preempt Plaintiff's Claims

Section 301 of the LMRA does not preempt Plaintiff's claims as neither of those claims are substantially dependent upon, or founded on, the terms of the PLA. LMRA § 301 confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). When "resolution of the state-law claim does not require construing [such a] collective-bargaining agreement," § 301 does not preempt state law. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). It is only when the state-law claim is "founded directly on rights created by collective-bargaining agreements," *Caterpillar*, 482 U.S. at 394, or that the "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" that the state-law claim is preempted by § 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages.'" *Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (quoting *Lingle*, 486 U.S. at 413 n.12.

Plaintiff alleges claims of tortious interference with prospective economic advantage and defamation. Neither claim is substantially dependent upon the terms of the PLA, nor is either claim founded directly on the rights established in the PLA. As to the tortious interference claim, Plaintiff alleges tortious interference with Plaintiff's capacity to enter into agreements regarding the

5

construction of non-ERY portions of the HYD, and the PLA only is applicable to the ERY. The Court is unaware of any basis supporting the conclusion that the tortious interference claim is founded directly on rights established in the PLA or substantially dependent upon the terms of the PLA.

Unable to cite to a single provision of the PLA which would be implicated in Plaintiff's tortious interference claim, *see* Defs.' Mem at 19-22, Defendants instead set forth the conclusory argument that "[t]he gravamen of Plaintiff's allegations are that Defendants are responsible for Plaintiff's alleged failure to realize cost savings anticipated from the ERY PLA" in other portions of the project. *Id.* at 20. That argument, at most, speaks only to a potential method for calculating damages—which is insufficient to trigger preemption. *See Vera v. Saks & Co.*, 335 F.3d at 115. As Defendant has failed to identify any provision of the PLA which would necessarily be implicated in Plaintiff's tortious interference claim, they have failed to carry their burden to show a reasonable probability that § 301 preempts that claim.

As to Plaintiff's defamation claim, Defendant has again failed to demonstrate that in order to determine the defamatory nature of the conduct alleged, that any provision of the PLA would need to be interpreted, much less that the defamation claim is somehow "substantially dependent" on the terms of the PLA. Indeed, none of the allegedly defamatory statements even mentions the PLA. Compl. ¶¶ 78, 94-104. However, in this area, Defendants' arguments suffer from an additional-fatal flaw, in that they do not address Plaintiff's invocation of *Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53 (1966).

"In *Linn* the Court held that the interest of the state in protecting its residents from malicious libel is 'an overriding state interest,' comparable to its interest in the 'maintenance of domestic peace,' and that state law is therefore not preempted by the LMRA when such statements are made in the course of a union organizational campaign," *Iodice v. Calabrese*, 512 F.2d 383, 390

6

n.11 (2d Cir. 1975) (quoting *Linn v.* 383 U.S. at 63), and "the complainant can show that the defamatory statements were circulated with malice and caused him damage. *Linn*, 383 U.S. at 64. Plaintiff has pled actual malice and that the allegedly defamatory statement caused the Plaintiff damage. Compl. ¶¶ 99-100. Accordingly, the defamation claim is not preempted.

### 2. LMRA § 303 Does Not Preempt Plaintiff's Claims

LMRA § 303 also does not preempt Plaintiff's claims because those claims do not identify any neutral-secondary actors, as required to implicate § 303.[1] "[T]he Supreme Court has explained that 'state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities.' The Court also held that the preemptive effects of section 303 extended to punitive damages."[2] *Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, Int'l Bhd. of Teamsters*, 762 F.2d 228, 232 (2d Cir. 1985) (quoting *Local 20, Teamsters v. Morton*, 377 U.S. 252, 260-61 (1964)). Section 303 "is commonly referred to as the Act's 'secondary boycott' provision, which prohibits any labor organization from 'picketing against an employer with whom it does not have a dispute, with an object of forcing that secondary employer to cease doing business with a primary employer.'" *NLRB v. Local 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 402 (2d Cir. 2006) (quoting *NLRB v. Local 3*, 730 F.2d 870, 875-76 (2d Cir. 1984)).

Section 303 "prohibits labor organizations from using threats, coercion, or restraint to interfere with the business relationships of employers engaged in commerce for the purpose of causing the employer to cease doing business with any other person. Such conduct has been labeled

---

[1] Section 303 provides a federal claim for violations of 29 U.S.C. § 158(b)(4). 29 U.S.C. § 187.

[2] There is some dispute amongst the Circuits as to whether § 303 completely preempts state law if prohibited secondary activity is the basis for the state-law claim. *Compare Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 808 (7th Cir. 2009) ("[W]e hold therefore that section 187(b) [§ 303] completely preempts state-law claims related to secondary boycott activities described in section 158(b)(4)") *with Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 960 (9th Cir. 2014) ("[section] 303 does not fully preempt any suit that is based on conduct arguably prohibited by the secondary boycott provisions of § 8 and made actionable by § 303") (discussing and disagreeing with *Smart*). However, as the Court rests its § 303 analysis on the conclusion that Plaintiff has not alleged secondary activity within the meaning of § 303, the Court need not determine the extent to which § 303 preempts such claims.

7

a 'secondary boycott' or 'secondary picketing' because it is not aimed at the primary employer . . . but rather, is directed 'to persuad[ing] the customers of the secondary employer to cease trading with him in order to force him to cease dealing with, or to put pressure upon, the primary employer.'" *Allstate Interiors Inc. v. Carpenters*, 10-cv-2861, 2010 WL 3894915, at *2 (S.D.N.Y. Sept. 10, 2010) (quoting *NLRB v. Retain Store Employees Union*, 447 U.S. 607, 612 (1980). "The gravamen of a secondary boycott . . . is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some [neutral] third party who has no concern in it. Its aim is to compel him to stop [doing] business with the employer in the hope that this will induce the employer to give in to his employees' demands." *Int'l Bhd. of Elec. Workers v. NLRB*, 181 F.2d 34, 37 (2d Cir. 1950)) (L. Hand, C. J.). "[N]eutral parties[ are] 'the helpless victims of quarrels that do not concern them at all.'" *Int'l Longshoremen's Ass'n, AFL-CIO v. Allied Int'l, Inc.*, 456 U.S. 212, 225 (1982) (quoting H.R. Rep. No. 245, 80th Cong., 1st Sess., 23 (1947)).

Plaintiff alleges that the BCTC and Mr. LaBarbera pressured its own affiliated-member unions in order to prevent Plaintiff from entering into agreements with those unions for labor on the non-ERY portions of the HYD. That conduct is not secondary activity within the meaning of § 303. In order for conduct to qualify as secondary, it must target a neutral party. Defendant has failed to identify any "helpless victims of [this] quarrel[]" that are "not concerned" with its outcome. *Int'l Longshoremen's Ass'n AFL-CIO*, 456 U.S. at 225. Therefore, as no neutral-secondary parties have been identified, the conduct alleged is not secondary within the meaning of § 303, and preemption is not warranted.

In an attempt to ward off this inevitable conclusion, Defendant makes the novel argument that its own affiliated-member unions are the neutral-secondary parties allegedly targeted in this dispute. Defs.' Opp. at 17. That position is without support in the law. The BCTC's affiliated-member unions, who participate in the BCTC through their elected delegates, cannot be considered

neutral. BCTC's Byaws art. III §§ 1, 6. The preamble of the BCTC's Bylaws makes it clear that one of the goals of the BCTC is "to coordinate and harmonize the activities, functions and interests of the affiliated Local Unions." *Id.*, preamble ¶ 6. Indeed, Defendants have argued that the "BCTC is a labor organization [because] employees [from the affiliated-member unions] participate in the BCTC through elected delegates." Defs.' Opp. 12. Given that coordination of its affiliated-member unions is one of the stated purposes of the BCTC, and that the BCTC's membership is composed of delegates from such unions, it is simply implausible that those unions are somehow "neutral" in one of the BCTC's ongoing labor disputes.

The Court rejects the position that the BCTC's own affiliated-member unions are neutral-secondary actors in this dispute, and therefore, as no secondary activity has been identified, finds that § 303 is not applicable, and that preemption is not warranted.[3]

### 3. The Court Need Not Determine Whether the BCTC Is a Labor Organization

A perquisite to the applicability of both § 301 and § 303 is that Defendant must be a "labor organization" as defined in 29 U.S.C. § 152. 29 U.S.C. §§ 185, 187. As the Court has determined that neither § 301 or § 303 warrants removal, it need not determine whether Defendant is a labor organization. The Court notes, however, the contradictory positions taken by Defendant in regards to this issue, which sing of gamesmanship.

As recently as 2015, in an attempt to avoid liability under § 303, the BCTC has claimed it was not a labor origination. *Bus. Asset Relocation, Inc. v. Teamsters Local 814*, 14-cv-0098-RRM VMS, 2015 WL 1443267, at *5 n.6 (E.D.N.Y. Mar. 27, 2015) ("BCTC contends that it is not a proper defendant

---

[3] In dicta, the Court cautions Defendants against raising speculative arguments purely for the sake of ephemeral advantage in the present litigation, especially when those arguments, if accepted, might have far reaching consequences. In the hope of avoiding remand to state court, Defendants have essentially taken the position that when they mobilize or influence the BCTC's affiliated-member unions, that activity constitutes a *prima facie* violation of § 303. While that may appear, in the short term, strategically advantageous to Defendants, a holding that supported Defendants' position on this issue could prove impactful on future labor disputes involving umbrella organizations such as the BCTC.

because it is not a 'labor organization.'"). Today, Defendant claims it is a labor organization in an effort to avoid remand. Defendant's principal evidence supporting its status as a labor organization is its bylaws. Defs.' Opp. at 15. Defendants also cite to National Labor Relations Board decisions which have previously found BCTC to be a labor organization. *Id.* at 14; *see Bus. Asset Relocation, Inc. v. Teamsters Local* 814, 2015 WL 1443267, at *5 n.6 (collecting cases). Counsel for Defendants has further proffered that BCTC files "LM-2 reports with the Department of Labor [and] . . . files all reports required of labor organizations," March 30, 2018 Tr. (ECF. No. 26-1) at 7:3-4, a contention Plaintiff corroborates noting that Defendant has "filed LM-2 reports since *at least* 2000." Pl.'s Mot. at 13 n.6 (emphasis in original). Disconcertingly, that evidence, cited to prove that BCTC is a labor organization, existed prior to BCTC claiming it was not a labor organization in 2015, begging the question as to BCTC's dramatic change in position. Ultimately, however, the Court need not take a position on whether Defendant is a labor organization to resolve this motion, and therefore declines to do so.

## III.    CONCLUSION

For the reasons stated above, Plaintiff's motion to remand is GRANTED. The Clerk of Court is directed to remand this case to New York State Supreme Court, County of New York.

SO ORDERED.

Dated: January 15, 2019  
New York, New York

GREGORY H. WOODS  
United States District Judge

10